BEAN et al. v. COMMERCIAL SECURITIES CO. et al.—156 S. W. (2d), 338.

Middle Section. May 10, 1941.

Petition for Certiorari denied by Supreme Court, December 6, 1941.

256

A. J. Grigsby, Jr., and Joseph Higgins, both of Nashville, for appellants Taylor et al.

James C. R. McCall, Jr., of Nashville, for appellee receiver.

CROWNOVER, P. J. This was a general creditors' and stockholders' bill, filed by Mrs. Flora G. Bean, a stockholder, the Odd Fellows' Hall Association and James C. R. McCall, judgment creditors, against the Commercial Securities Company, the Hermitage Trust Company, J. C. Askew, Sr., Mrs. J. C. Askew, T. I. Taylor, W. P. Finney and Mrs. Julia F. Sparks, for the purpose of winding up the affairs of the Commercial Securities Company as an insolvent corporation that had ceased to do business as a going concern, for the appointment of a receiver, and to have set aside as ultra vires, fraudulent and void certain conveyances of real estate and personalty executed by that corporation to the Hermitage Trust Company (and conveyed by it to the other defendants, grantees), in consideration of its own stock, as an illegal purchase and reduction of its capital stock.

The Hermitage Trust Company, J. C. Askew, Sr., and T. I. Taylor answered and denied that complainants were entitled to any. relief as the Securities Company was not insolvent when the transactions were had.

They admitted that the Hermitage Trust Company had conveyed its assets valued at $39,787.28, gross value (incumbered with liabilities of $11,620), $28,167.28 net value, and executed its note for $10,955.00 to the Securities Company for 11,116 shares of common stock transferred to them, but pleaded that the Hermitage Trust Company was not authorized by its stockholders or directors at a regular called meeting to make the deal.

They alleged that on account of fraud and mismanagement of the Securities Company, the Hermitage Trust Company proposed and it was agreed that the Securities Company reconvey the assets formerly conveyed to it by the Hermitage Trust Company, valued at $35,940 (incumbered with liabilities of $9,495), and that its said note of $10,955 be cancelled and returned, that they deliver up to the Securities Company its stock for cancellation, and in compliance with said agreement the reconveyances were executed and the stock was delivered.

They denied that McCall and the Odd Fellows Hall Ass'n were bona fide creditors and that their debts were in existence when the transactions were had.

They denied that the reconveyances of the property and the stock transaction were in violation of the statutes, ultra vires and void, and that these defendants benefited by the transactions.

Mrs. Askew filed a separate answer as a cross-bill, and alleged that there was no meeting of the stockholders of the Hermitage Trust Company called for the purpose of authorizing a transfer of its assets to the Commercial Securities Company, and no meeting of the directors was called for such purpose. She further alleged that she was not a stockholder or director, that she attended no meetings, and that the transaction of conveying its assets to the Commercial Securities Company was ultra vires. She filed her answer as a cross-bill and asked for damages for the wrongful interference with the sale of her property as a result of the filing of the creditors' bill.

The Commercial Securities Company filed an answer and denied that the reconveyances of the realty and assets to the Hermitage Trust Company were ultra vires and illegal, as the conveyances were authorized by the stockholders. It admitted that it was forced to close its doors for lack of operating capital.

The Chancellor sustained the bill as a general creditors' bill and appointed John C. Sandidge as receiver, who filed a bill in which the reconveyances were attacked for fraud and illegality for the reasons set out in the original bill and he asked that they be set aside.

The Chancellor held that the repurchase of the stock for cancellation in consideration of the transfer of said assets to the Hermitage Trust Company was void because the transaction was not authorized by the stockholders, and because the Securities Company had no surplus with which to pay for said stock. He decreed that the

conveyances of said realty to the Askews and Taylor were also void and should be set aside, and that the receiver recover all the realty and personalty including notes, mortgages and accounts described in the decree for the administration of the corporation. He also ordered an accounting for the rents, and a reference for ascertaining what assets the Commercial Securities Company had, the names of its creditors and the amounts due them, and the names of its stockholders.

The Clerk & Master reported the amount of assets of the Commercial Securities Company, the names of the creditors and the amounts due each, the names of the stockholders and the amount of stock issued to each, the real estate conveyed by the Hermitage Trust Company to Taylor and Mrs. Askew, the amount of rents collected, and the amounts expended for taxes, etc., the real estate disposed of, the amount of the notes and other assets in the hands of T. I. Taylor, the liabilities of the Commercial Securities Company assumed by the Hermitage Trust Company and the payments made on each, and the expenses paid by the Hermitage Trust Company in connection with such assets.

The Chancellor confirmed the report and decreed that the receiver of the Securities Company recover of the Hermitage Trust Company, T. I. Taylor, John C. Askew, Sr., and Mrs. J. C. Askew all of said property.

The Hermitage Trust Company, T. I. Taylor, J. C. Askew, Sr., and Mrs. J. C. Askew excepted to said decree and prayed an appeal to this court, which was granted, but only Taylor and the Askews perfected their appeals on the paupers' oath.

The Commercial Securities Company and the Hermitage Trust Company did not appeal or assign errors.

The appellants have assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in finding that the stockholders of the Commercial Securities Company did not authorize that Company to reconvey to the Hermitage Trust Company the real estate and personalty for the cancellation of the shares of stock.

(2) The Chancellor erred in decreeing that the reconveyance of the property was fraudulent or void for any reason, and in directing a return of the property to be sold for the liquidation of the debt, as the reconveyance was based on a valid consideration and the remaining assets of the Commercial Security Company were equal to its liabilities.

(3) The Chancellor erred in not holding that the stockholders of the Commercial Security Company participated in the authorization of the reconveyance and are therefore estopped.

(4) The Chancellor erred in holding that McCall and the Odd Fellows Hall Association were creditors, and in allowing them to maintain this creditors' bill, and in decreeing that they should participate as creditors in the proceeds of the assets of that corporation.

(5) The Chancellor erred in allowing the receiver to become a party complainant, and to file a bill for relief.

(6) The Chancellor erred in not allowing the Hermitage Trust Company, Taylor and Askew to take additional evidence.

(7) The Chancellor erred in not allowing defendant Taylor compensation for his services in collecting and preserving the assets of the Commercial Security Company.

The facts necessary to be stated are as follows:

The Commercial Securities Company was chartered on May 13, 1936, to conduct a small loan business, with its principal office in Nashville.

It was authorized by its charter to issue 1,000 shares of no par common voting stock, 1,000 shares of no par common Class B nonvoting stock, and 2,000 shares of 6% preferred stock of the par value of $10 per share.

The Hermitage Trust Company was a corporation engaged in the mortgage, loan and real estate business in Jackson, Tenn. Its stock of 210 shares was owned: 5 shares by J. C. Askew, Sr., 100 shares by Mrs. J. C. Askew, and 105 shares by T. I. Taylor.

T. I. Taylor and J. C. Askew, Sr., testified that the Hermitage Trust Company wanted to enter the small loan business and undertook to enter into a merger with the Commercial Securities Company; that the men interested in the Securities Company, Elvis Reid, Henry Tyne, S. J. Fishman, and H. K. Kellum, each orally agreed to purchase $2,500 of stock in the Securities Company for cash and to amend its charter increasing the stock if the Hermitage Trust Company would combine with it; that on May 27, 1936, the Securities Company wrote a letter to the Trust Company agreeing to amend its charter increasing its stock and to issue stock to the Hermitage Trust Company in consideration of the transfer to it by the Hermitage Trust Company of assets of the value of $28,167.28 net; that it was agreed that the Hermitage Trust Company should have the exclusive right to sell said stock; that all the remaining common stock should be issued to the Hermitage Trust Company at $1 a share, with the provision that the Hermitage Trust Company would purchase and pay for a $10 share of preferred stock in the Securities Company for each share of common stock that might be sold by the Hermitage Trust Company, and that the Trust Company should execute its note payable to the Securities Company for $10,955.

The said letter of May 27, 1936, provides:

"Confirming our verbal agreement, we make you the following offer for the assets of your company.

"We agree to amend our charter so that we can issue twenty-five thousand shares of 7% preferred stock at par value of $10.00 per share, and twenty-five thousand shares of voting common stock at no par value. Of this stock you will be issued forty-eight hundred

shares of the common stock at a value of ten cents per share, and the remainder of your assets will be exchanged for preferred stock at par value.

"The following is a list of your assets and liabilities on which it is agreed to make the exchange: (Here follows list of assets.) . . .

"It is agreed that we take all the above listed assets, and assume the liabilities as set out herewith.

"Your acceptance of this letter will form a contract between us."

The letter was signed by the Securities Company by its president and accepted by the Hermitage Trust Company by J. C. Askew, president and T. I. Taylor, Secretary.

Nothing was said in said letter, which was the contract between them, about the paying in of the $10,000 of oral subscriptions.

The Securities Company's Charter was amended, on June 2, 1936, to authorize the issuance of 25,000 shares of stock of each of the three classes and to increase the rate of the preferred stock to 7%.

At a stockholders' meeting of the Securities Company, held on June 12, 1936, the acquisition of the assets and liabilities of the Trust Company was approved.

At a meeting of the Board of Directors of the Securities Company, held on July 6, 1936, a resolution was passed authorizing "all stocks to be sold by the Commercial Securities Company, Inc., to be sold in a block of —— units to the Hermitage Trust Company for —— per unit, evidenced either in cash or by acceptable note of said Hermitage Trust Company."

11,116 shares of common stock were issued to the Hermitage Trust Company. It gave the Securities Company its note for $10,995.00 and transferred to the Securities Company assets (real estate, first mortgage notes, etc.) of the value of about $39,787.28, and the Securities Company assumed $11,620 of the liabilities of the Trust Company. The Trust Company kept possession of these assets and remitted to the Securities Company the amounts it collected on same.

It appears that some of the stock to which the Hermitage Trust Company was entitled was issued to Taylor and Mr. and Mrs. Askew, and that the stock issued to the Hermitage Trust Co., Taylor and the Askews was about 90% of the capital stock.

The Tennessee Legislature passed an Act in January, 1937 (Pub. Acts 1937, Ch. 34), effective February 2, 1937, reducing the interest rate on small loans from 3% per month to 1% per month.

Taylor testified that in February, 1937, the Hermitage Trust Company became dissatisfied with the way the Securities Company was being operated and it was agreed that the assets of the Hermitage Trust Company should be returned to it and the stock of the Securities Company should be returned to it and cancelled.

At the regular annual meeting of the stockholders of the Securities Company, held on February 9, 1937, J. C. Askew, Jr., made the

following motion: "That the Board of Directors be empowered to make any new contract with an individual or individuals, corporation or corporations, company or companies either to consolidate with another company by exchanging the assets of Commercial Securities Company for stock in another corporation or corporations; or changing the present plan of the operation of this company to another plan or plans of operation or to liquidate the assets of the Commercial Securities Company or make any contract or contracts along these lines most consistent with the welfare of the present stockholders of the Commercial Securities Company. T. I. Taylor seconded this motion and the same was unanimously carried."

At a regular monthly meeting of the Board of Directors, held on February 9, 1937, "J. C. Askew suggested that in order to facilitate the arriving at a conclusion as to what ought to be done with the company along the lines of the resolution passed by the stockholders in their annual meeting February 9, 1937, that a committee be appointed by the directors to work on this matter. J. C. Askew made a motion to appoint a committee to work out a satisfactory solution and to report back to the Board of Directors at a meeting to be called as soon as practicable." The motion was seconded and unanimously carried, and a committee was appointed. On motion, the meeting adjourned subject to call by the committee to meet again at their request.

At a special meeting of the Board of Directors of the Securities Company, held on February 24, 1937, at the call of said committee (Taylor, president, and J. C. Askew, Sr., vice-president), the following resolution was adopted:

"Be it resolved by the Board of Directors of the Commercial Securities Company that all assets and liabilities acquired by the Commercial Securities Company from the Hermitage Trust Company on or about June 1, 1936, be transferred back to the Hermitage Trust Company, said transfer to be effective as of February 24, 1937, and that Mrs. J. C. Askew, J. C. Askew, Jr., N. R. Smith, G. Henry Tyne, H. A. Holder, and T. I. Taylor surrender to the Treasurer of Commercial Securities Company, Inc., common and preferred stock issued in payment thereof and the treasurer of the Commercial Securities Company be instructed to cancel said stock.

"The officers of the Commercial Securities Company are hereby authorized to sign said contract and transfers as above set out.

"Be it also resolved that Hermitage Trust Company surrender 10955 shares of the common stock of Commercial Securities Company and the Treasurer of Commercial Securities Company be instructed to cancel same and return to Hermitage Trust Company their note for $10,955.00 given in payment for said stock.

"It is further understood and agreed that Commercial Securities Company agrees to hold itself liable on a note for $1000.00 due May 25, 1937, and secured by J. W. Ricks and J. F. Taylor mortgages."

The minutes further recite:

"This meeting was held at the request of the Committee appointed by the regular monthly meeting of the Board of Directors February 16, 1937, which meeting was adjourned subject to the call of the Committee. . . . The Chairman called attention to the fact that a resolution was adopted at the meeting of the stockholders February 16, 1937, authorizing the Board of Directors to take any action deemed best for the Company and that this contract can be closed without further action by stockholders or directors."

The minutes were signed: "T. I. Taylor, President."

No resolution authorizing the Board of Directors to sell, exchange, or dispose of its assets was passed by the stockholders at any stockholders' meeting.

On March 2, 1937, T. I. Taylor resigned as director and president of the Securities Company and J. C. Askew, Sr., resigned as director and vice-president.

On March 2, 1937, the Securities Company transferred and conveyed to the Hermitage Trust Company, of Jackson, Tenn., the following property: Real estate of the value of $12,750; first mortgages, $12,655.36; second mortgages, $1,558.04; notes receivable, $1,066; accounts receivable, $211.50; six Consolidated Gas and Electric 6% Bonds, $6,000; furniture, $700; making a total of $35,940, all of which property is fully described in the decree of the Chancellor. The Hermitage Trust Company assumed $9,495 of debts of the Securities Company.

The only assets left in the possession of the Securities Company were 14 notes of the face value of about $1,600, the actual value of which is two or three hundred dollars.

The following stock of the Securities Company was cancelled as of February 24, 1937:

| Hermitage Trust Company | 11,116 shares Common | | | |
|---|---|---|---|---|
| T. I. Taylor | 2,200 " | " | , | 1384 Preferred, |
| Mrs. J. C. Askew | 600 " | " | , | 1200 " |
| J. C. Askew | 16 " | " | , | |
| J. C. Askew, Jr. | 859 " | " | , | 59 " |
| Dr. H. A. Holder | 25 " | " | , | 25 " |
| Norton R. Smith | 50 " | " | , | 50 " |

Taylor and Mrs. Askew were the principal stockholders in the Securities Company. Taylor and Mr. and Mrs. Askew owned all the stock of the Hermitage Trust Company. Taylor and J. C. Askew, Sr., were officers in both corporations. Mr. Askew was Mrs. Askew's husband, and was her agent and representative in all matters concerning the two corporations.

After the return of the said assets to the Hermitage Trust Company they were divided among T. I. Taylor, J. C. Askew, Sr., and Mrs. J. C. Askew, and conveyances were executed.

The Securities Company, having no assets, was forced to go out of business.

Several judgments have since been obtained against it by creditors.

1. We are of the opinion that the first assignment of error, to the effect that the Chancellor erred in holding that the reconveyance was void because the stockholders had not authorized the Board of Directors to take such action, is not well made and must be overruled.

Code, section 3748, provides:

"Every corporation now existing or which may hereafter be formed hereunder may, by action taken at any meeting of its board of directors, sell, lease or exchange all of its property and assets, including its good will and its corporate franchises, upon such terms and conditions and for such consideration which may be in whole or in part shares of stock in, and/or other securities of, any other corporation or corporations, as its board of directors may deem expedient, when and as authorized by the affirmative vote of a majority of the stockholders of record entitled to vote on a proposal to sell, given at a stockholders' meeting called for that purpose in the manner provided in section 3738, but with notice thereof to each stockholder of record, whether entitled to vote or not; provided, however, that the certificate of incorporation may require on such proposal the vote of a larger proportion of the stockholders and the separate vote of a majority or a larger proportion of any class of stockholders of record; and provided, further, that, unless the certificate of incorporation or an amendment thereof shall provide otherwise, no vote or consent of stockholders shall be necessary for a transfer of assets by way of mortgage, or in trust or in pledge to secure indebtedness of the corporation. Nothing in this section is intended to restrict the power of any corporation, without express authorization of shareholders, to sell, lease, exchange or otherwise dispose of, any of its property, provided the corporate business be not substantially limited."

It seems that this section applies only to sales of all the corporation's property and not to sales of part of it. University of Tennessee v. Memphis Hospital College Bldg. Co., 6 Tenn. App., 131.

It will thus be seen that the sale of all the corporation's assets may not be had unless it is authorized by an affirmative vote of a majority of the stockholders of record. It will also be observed that this section does not prohibit the sale, lease, or exchange of some of the corporate property and assets, if such disposition of the assets does not substantially limit the corporate business.

This section of the Code is almost identical with section 64A of the Delaware Corporation Act, Code 1935, section 2097, which Act has been construed in several decisions of the Delaware courts.

"Allied Chemical, etc., Corp. v. Steel, etc., Co., 14 Del. Ch. 1, 120 A. 486, contains an excellent discussion of this section. It is there said: 'In reading this statute it will be observed that two things with re-

spect to a sale are contemplated, viz. (a) an authorization of sale by the stockholders, and (b) a fixing of the terms and conditions by the directors. With respect to the latter, the directors must determine upon such terms and conditions as they deem expedient and for the best interests of the corporation. Thus the right of the directors to define terms and conditions of sale is circumscribed by a discretion which must consult not only expediency, but as well the best interests of the corporation.'" Vartanian on The Law of Corporations in Tennessee, Appendix, p. 32; Robinson v. Pittsburg Oil Refining Corporation, 14 Del. Ch., 193, 126 A., 46, 48.

It has been held that the creditors of a corporation cannot question the validity of sales and mortgages not authorized by a vote of the stockholders antedating the vote of the directors authorizing the sale or mortgage under this section. Greene v. Reconstruction Finance Corporation, 1 Cir., 100 F. (2d), 34. But the bill on behalf of Mrs. Flora G. Bean directly raises this question, and she, being a stockholder, has a right to maintain this bill.

The transaction in controversy comes directly within the provisions of this section of the Code (3748). Practically all of the assets of the Securities Company were conveyed to the Hermitage Trust Company, which transaction rendered it insolvent.

The reconveyance of the assets by the Commercial Securities Company to the Hermitage Trust Company in consideration of the delivering up and cancelling of its stock, was not authorized by the stockholders. In fact, such a transaction was not in the contemplation of the stockholders at the time of the stockholders' meeting.

2. The insistence that the Chancellor erred in holding that the reconveyance of the assets was fraudulent and void, is not well made. A corporation is not authorized to buy its own stock for cancellation except when it has a surplus sufficient to pay for the stock. Code, section 3722(9) ; see opinion of this Court in the case of Gordon Baird v. McDaniel Printing Company, 153 S. W. (2d), 135, filed on April 19, 1941.

By manipulating this transaction the corporation was rendered insolvent and ceased to be a going concern. Practically all of its assets were conveyed to the Hermitage Trust Company for its own stock, and it became insolvent.

It is insisted that Reid, Tyne, Fishman and Kellum had orally agreed to purchase $2,500 each of the stock of the Securities Company, but failed to do so, and if they had taken this stock the Company would not have been insolvent. It appears that this stock transaction was abandoned when the Hermitage Trust Company entered into the deal. The contract of merger of the two corporations, of May 27, 1936, does not mention the subscriptions orally made by these gentlemen, but, on the contrary, it was testified by Taylor and Askew that all the remaining stock after the charter was amended should be issued to

and sold by the Hermitage Trust Company, and this was done, which shows that they had abandoned the oral subscriptions to the stock.

After the reconveyance was made, the Securities Company was insolvent and ceased to be a going concern. There were several creditors who obtained judgments.

"The assets of a corporation constitute, as between itself and its creditors, a trust fund for the payment of its debts. . . . Creditors may pursue the person wrongfully obtaining such assets, for their value or for the assets in kind." Vance & Kirby v. McNabb Coal, etc., Company, 92 Tenn., 47, 20 S. W., 424; Whaley v. King, 141 Tenn., 1, 206 S. W., 31.

3. It is next insisted that the Chancellor erred in not holding that the stockholders of the Commercial Securities Company participated in the authorization of the reconveyance and are therefore estopped. We think this assignment is not well made for the reason that this reconveyance deal was not contemplated at the time of the last stockholders' meeting and was not authorized by them. There is nothing to show that they ratified this reconveyance deal after they had learned what had been done.

4. It is insisted that the Chancellor erred in holding that McCall and the Odd Fellows Hall Association were judgment creditors, and in allowing them to maintain the bill to participate in the assets of the corporation. These claims accrued on contracts made before the reconveyances were executed on March 2, 1937. They brought suits against the Securities Company and obtained judgments, which cannot be attacked collaterally by the defendants and third parties. Mrs. Bean was a stockholder and she had a right to maintain the bill to recover the corporate assets and to ask that they be applied on the debts, and that the balance of the assets be ratably distributed to the stockholders. Code, section 9358; O'Connor v. Knoxville Hotel Co., 93 Tenn., 708, 28 S. W., 308; Knapp v. Supreme Commandery, etc., Golden Cross, 121 Tenn., 212, 118 S. W., 390.

5. It is insisted that the Chancellor erred in allowing the receiver to become a party complainant and to join in the bill for relief. The object of the receiver's bill was to recover the assets for the benefit of the creditors. These assets were a trust fund for the benefit of the creditors, and the Chancellor was correct in permitting the Receiver to join in the suit for a recovery.

6. It is insisted that the Chancellor erred in not allowing the Hermitage Trust Company, Taylor and Askew to take additional evidence. This was a matter within the sound discretion of the Chancellor, and we think he did not abuse his discretion in refusing to allow Taylor and Askew to take additional proof after the case was called. There was no showing by them that the proposed evidence would be material. They did not show any valid reason or excuse why they did not take their testimony before the hearing. A

new trial or a review of the case will be granted on account of newly discovered evidence only when it is evident that an injustice has been done, and the result will be changed. And the parties must show due diligence in preparing the case for trial. Travis v. Bacherig, 7 Tenn. App., 638. This assignment must be overruled.

7. It is insisted the Chancellor erred in not allowing the defendant Taylor compensation for his services in collecting and preserving the assets of the Securities Company. Instead of preserving them for the Company, Taylor aided the other defendants in having the Commercial Securities Company convey its assets away to the Hermitage Trust Company, and then went further and had the Hermitage Trust Company fraudulently convey the assets to himself and others. Instead of preserving the assets for the Securities Company he dissipated them as far as he was able to do so, and as a result has caused much litigation and is still litigating; hence we think the Chancellor was correct in denying him any compensation.

As has been hereinabove stated, neither the Hermitage Trust Company nor the Commercial Securities Company has appealed or assigned errors as to the decree rendered against them.

In a suit by a creditor to set aside a fraudulent conveyance, a corporation that has conveyed all its interest in the property has no right to appeal on that proposition. Hunt v. Childress, 73 Tenn. (5 Lea), 247; War Finance Corporation v. Davenport, 4 Tenn. App., 599.

But a corporation must appeal as to a judgment against it, where it is the duty of the corporation to make defense, and the stockholders cannot assign errors for the corporation under such circumstances.

"A stockholder is so in privity with and represented by, the corporation that he is bound by a judgment against the corporation in so far as it deals with corporate rights and liabilities and affects the stockholders as a body" (34 C. J., 1026, sec. 1457), and "as to all matters which the corporation urged, or might have urged, as a defense to the judgment against it." 18 C. J. S., Corporations, p. 1399, secs. 672, 673; 6 Thompson on Corporations (3 Ed.), sec. 4981. "But he is not bound in respect to individual rights and liabilities or rights and liabilities which are not common to all the stockholders." 34 C. J., 1026, section 1457; 18 C. J. S., Corporations, p. 1405, sec. 673d.

"In the absence of fraud and collusion, or want of jurisdiction, a judgment against a corporation is conclusive upon a stockholder as to all matters which might have been urged by the corporation as a defense thereto, such as the existence of the liability of the corporation, the amount of the liability, the validity of the claims, even though the stockholder had no notice of the proceedings against the corporation, and was not a party thereto, and although such stock-

holders are nonresidents of the state where the judgment was rendered.'' 14 C. J., 1061, sec. 1652; 18 C. J. S., Corporations, sec. 673.

██ ██ ''A judgment against the corporation rendered without notice to the stockholder is not only conclusive upon persons who are stockholders at the time but has also been held conclusive upon other persons not actually stockholders. Former stockholders who have parted with the title to stock of the corporation, may be concluded as stockholders by virtue of a rule of the corporation forbidding a transfer on its books while an unpaid assessment exists or by a statute.'' 14 C. J., 1067, sec. 1661; 18 C. J. S., Corporations, sec. 673.

██ ''A stockholder may also be concluded by a judgment not alone by reason of his status as a stockholder but because of some wrong committed, as where the assets of the corporation have been distributed among the stockholders without first making provision for the payment of corporate liabilities. In such a case a stockholder having assets of the corporation in his possession is concluded by the judgment against the corporation.'' 14 C. J., 1068, sec. 1661; 18 C. J. S., Corporations, sec. 673.

██ ''The judgment against the corporation is conclusive upon stockholders as to corporate affairs such as the existence of the liability of the corporation, the amount of the liability, the validity of the claims against the corporation, and other matters which might have been urged by the corporation as a defense to the action brought against it.'' 14 C. J., 1068, sec. 1662; 18 C. J. S., Corporations, sec. 673.

██ ''It has been held that a stockholder cannot question the judgment against the corporation on the ground that it was based on an ultra vires act.'' 14 C. J., 1069, sec. 1662; 18 C. J. S., Corporations, sec. 673.

██ But where one obtains a judgment against a corporation declaring that a conveyance to a stockholder is fraudulent it is not conclusive on the grantee stockholder and he may contest the debt or the legality of the obligation, and he may show its invalidity in any proceeding in which it is sought to be used to his prejudice. 27 C. J., 758, secs. 645, 646; 18 C. J. S., Corporations, p. 1405, sec. 673d.

██ The purchaser from a fraudulent grantee holds the property subject to all the remedies that could be enforced against it in the hands of his vendor. 27 C. J., 695, sec. 524.

██ Hence we are of the opinion that the creditors' judgments against the corporation cannot be attacked by the stockholders or the grantees holding the assets, and we are further of the opinion that the decree against these corporations as to all matters which the corporations could have urged, or might have urged, as a defense to the decree against them in this suit, is final, as the corporations did not appeal or assign errors. But, of course, the grantees in those reconveyances may attack on appeal the decree declaring that their

conveyances were fraudulent, and they may contest the legality of the obligation or show its invalidity where it is sought to be used against them to their prejudice.

It results that all the assignments of errors are overruled and the decree of the Chancellor is affirmed, and the cause will be remanded to the Chancery Court of Davidson County for the administration of the corporate assets in accordance with the decree of the Chancellor. The costs of the appeal are decreed against the appellants. The costs of the cause that accrued in the lower court will await the final determination of the cause.

Felts and Howell, JJ., concur.