DIVERSIFIED EQUITIES, INC., Judy McCurley and Ron Sink, Plaintiffs-Appellants,

v.

Gary WARREN and Juanita Warren, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Dec. 3, 1976.

Certiorari Denied by Supreme Court May 2, 1977.

George E. Barrett, Nashville, for plaintiffs-appellants.

H. McKinley Marlow, Jr., Jack Green, Nashville, for defendants-appellees.

DROWOTA, Judge.

## OPINION

This is a fraudulent practices securities case arising out of the sale of three businesses. Plaintiffs-Appellants sought rescission or reformation of a contract in which they purchased two health spa corporations and a sole proprietorship from defendants.

Plaintiffs contended that defendants made certain fraudulent representations to them concerning the value of the accounts receivable held by the two corporations which entitle them to a cancellation or reduction of a promissory note given to defendants. Plaintiffs also sought to be paid the cash value of an insurance policy on the life of one of the defendants, Gary Warren, pursuant to their agreement. Defendants filed an answer and counterclaim, denying that any misrepresentations were made and asking for judgment in the full amount of the note on the ground that plaintiffs have failed to make the first monthly installment on the note, which has a clause accelerating payment upon default.

Defendants demanded a jury trial and a six-member jury was empaneled. The following factual questions were presented to the jury:

1. Did defendants make any fraudulent misrepresentations to the plaintiffs in the financial statements furnished plaintiffs at the time of the closing of the transaction? (Yes or No.)

2. Did plaintiffs rely upon the financial statements furnished by defendants in the purchase of the corporation? (Yes or No.)

3. In the written agreement between the plaintiffs and defendants, it was agreed as follows: "Sell and transfer the existing life insurance policy on Mr. Warren to Mr. Warren." Did this agreement have reference to the New York Life Insurance policies? (Yes or No.)

The jury's unanimous answers to the questions were: *Yes* to No. 1, *No* to No. 2, and *Yes* to No. 3. In accordance with these answers, the Chancellor found that plaintiffs were entitled to the cash value of the New York Life Insurance policies ($7,200.00) and that defendants were entitled to $125,000.00, the principal amount of the promissory note, plus $2,500.00 in interest and $7,500.00 attorneys' fees. Plaintiffs' motion for a new trial was denied and this appeal ensued. The Chancellor's decision that plaintiffs were entitled to the cash value of the life insurance policies was not appealed.

Plaintiffs are Diversified Equities, Inc., and its principal shareholders, Judy McCurley and Ron Sink. On October 8, 1974, McCurley, through a casual conversation with defendant Gary Warren, learned that defendants were attempting to sell their three businesses. These businesses were the World Wide Spas, Inc., which operated a health spa in the One Hundred Oaks Shopping Center; Charlotte Roman Health Spa, Inc., which operated a health spa in the Charlotte Square Shopping Center; and Future Investments Company, an individual proprietorship which operated as a collection and sales agent for the first two corporations.

The parties met on October 9, 10, and 11, 1974, to discuss a possible sale of these businesses. On October 11, they agreed upon the sale and signed the contract conveying the businesses to plaintiffs. The parties agreed upon a purchase price of $200,000.00. Of this total, $75,000.00 was to be a down payment payable in three installments, the first of which was due on January 2, 1975. The $125,000.00 balance of the purchase price was represented by a promissory note, executed by Judy McCurley in her official capacity as president of Maryland Farms Spa, Inc. (the former name of plaintiff corporation), and guaranteed by plaintiffs McCurley and Sink in their individual capacities. The note, which bore interest at four per cent, was to be paid in six monthly installments commencing on February 1, 1975.

Plaintiffs paid the entire $75,000.00 down payment. Instead of paying the initial note installment due February 1, 1975, however, plaintiffs, seeking a rescission or reformation of the contract, filed their complaint in this case on February 19, 1975. Plaintiffs contended that in purchasing these businesses they had relied on certain financial statements of the two corporations. These statements, dated June 30, 1974, listed $288,000.00 as accounts receivable. Plaintiffs, however, were able to find less than $100,000.00 of accounts receivable, and alleged that defendants had perpetrated a fraud on them. Defendants, on the other hand, stated that no misrepresentations had been made to plaintiffs and that plaintiffs had not relied upon the financial statements in question.

The Chancellor, in accordance with the findings of the jury, held that plaintiffs were not entitled to rescission or reformation since they did not rely on the misrepresentations in the financial statements. The Chancellor further found that defendants were entitled to the full amount of the promissory note plus interest and attorneys' fees.

All three plaintiffs appealed upon a pauper's oath under T.C.A. § 20–1629. Defendants-appellees have filed a motion to dismiss the appeal of plaintiff corporation, arguing that a corporation is not entitled to appeal upon a pauper's oath under T.C.A. § 20–1629.

■ Section 20–1629 provides that, except in certain enumerated cases, any resident of this state may commence an action without giving security if that resident swears to the pauper's oath contained in the statute. We have found no reported Tennessee cases which have allowed a corporation to appeal on the pauper's oath.

The pauper's oath required by T.C.A. § 20–1629 uses the word "I" throughout. We interpret this use of "I" as restricting the pauper's oath to natural persons. We hold that since a corporation is an artificial entity it is not entitled to appeal upon a pauper's oath under T.C.A. § 20–1629.

The appeal of Diversified Equities, Inc., will be dismissed without prejudice of plaintiff corporation to apply for writ of error upon making a proper bond.

I.

In plaintiffs' first assignment of error, they contend that the verdict is contrary to the law because common law reliance is not an element of a fraudulent practice under

T.C.A. § 48–1644.[1] We have found no reported cases construing § 48–1644.

The language of T.C.A. § 48–1644 is similar to the language of Rule 10b–5, promulgated by the S.E.C. under § 10(b) of the Securities and Exchange Act of 1934. We have reviewed the federal case law interpreting Rule 10b–5 and conclude that when a material misrepresentation is made, reliance upon that misrepresentation must be proven to recover under Rule 10b–5. Reliance is established when one proves that the misrepresentation is a substantial factor in determining the plaintiff's course of conduct. See *List v. Fashion Park, Inc.,* 340 F.2d 457 (2nd Cir. 1965), *cert. denied sub nom. List v. Lerner,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 378 F.Supp. 112 (S.D.N.Y.1974); A. Jacobs, The Impact of Rule 10b–5 § 64.01 (Clark Boardman's Securities Law Service 1974).

The substantial factor test adopted by the federal courts is the same reliance test used in the common law misrepresentation action. See W. Prosser, Handbook of the Law of Torts § 108 (4th ed. 1971).

We find federal case law interpreting Rule 10b–5 to be persuasive and thus hold that reliance is an element of a fraudulent practice under T.C.A. § 48–1644. Plaintiffs' first assignment of error is overruled.

## II.

Plaintiffs argue in their second assignment of error that the jury's findings and the Chancellor's decision were against the weight of the evidence. Plaintiffs contend that the preponderance of the evidence established that they relied upon defendants' misrepresentations.

There is a great deal of conflicting testimony on the issue of whether plaintiffs relied on the misrepresentations in the June 30, 1974, financial statements. The decision of the Chancellor as to the credibility of witnesses is final and not subject to review in the appellate court. *Early v. Street,* 192 Tenn. 463, 241 S.W.2d 531 (1951); *Weeks v. Summerlin,* 62 Tenn.App. 650, 466 S.W.2d 894 (1970).

Upon a review of the evidence, we find that a preponderance of the evidence supports the jury's finding and the Chancellor's decision that plaintiffs did not rely upon the misrepresentations in the June 30, 1974, financial statements.

Plaintiff McCurley was familiar with the defendants' businesses, having been employed by them and having worked in other spas for ten years. Plaintiff Sink is a certified public accountant. There was testimony that plaintiffs were informed that the June 30, 1974, balance sheets were prepared specifically for Associates Capital and that the corporations were on the cash basis and generally did not list accounts receivable on their balance sheet. There was evidence that defendants turned over all the records of the businesses to plaintiffs and delayed cashing the check for the initial payment until plaintiffs had an opportunity to examine these records. We therefore feel constrained to overrule plaintiffs' second assignment of error.

## III.

In their third assignment, plaintiffs argue that the Chancellor erred in denying their motion, made at the conclusion of all the evidence and pursuant to Rule 15.02 of

1. T.C.A. § 48–1644 provides:

It shall be a fraudulent practice and it shall be unlawful:

(A) For any person knowingly to subscribe to, or make or cause to be made, any material false statement or representation in any application, financial statement or other document or statement required to be filed under any provision of this chapter; or

(B) For any person, in connection with any transaction or transactions in this state which involve any offer to sell or buy securities, or any sale or purchase of securities, including securities exempted under the provisions of § 48–1619 and including any transactions exempted under the provisions of § 48–1632, either directly or indirectly, (i) to employ any device, scheme or artifice to defraud or (ii) to engage in any act, practice, transaction or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller.

the Tennessee Rules of Civil Procedure, to amend the pleadings to conform to the evidence presented. By this amendment, counsel for plaintiffs sought to add a cause of action for breach of contract. It was alleged that defendants breached the following provision in the contract: "You have represented and I have accepted that except as set forth on balance sheets of [Charlotte Roman Spa, Inc., World Wide Spas, Inc., Future Investments Company] attached to this letter, there are no other obligations which would materially and adversely affect the operation of such companies." Specifically, plaintiffs argue that this provision of the contract was breached in that the financial statements did not reflect the collection fee liability owed to Nashville Adjustment Bureau on the accounts receivable placed with them.

Rule 15.02 of the Tennessee Rules of Civil Procedure provides:

> When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; . . .

The Chancellor found that the breach of contract issue was not tried by the express or implied consent of the parties and thus denied plaintiffs' motion to amend their pleadings. Wide discretion is vested in the trial judge in granting or refusing amendments during the course of the trial and such discretion will not be disturbed unless clearly abused. *Womble v. Walker*, 216 Tenn. 27, 390 S.W.2d 208 (1965); *Derryberry v. Ledford*, 506 S.W.2d 152 (Tenn.App.1973).

We find that the Chancellor did not abuse his discretion in denying plaintiffs' motion to amend their pleadings. Upon a review of the evidence it is unclear whether the issue of breach of contract was tried by the express or implied consent of the parties. The undisclosed collection fee of the Nashville Adjustment Bureau was mentioned a few times at the trial, but this evidence also related to the issue of whether defendants misrepresented the value of the accounts receivable.

The third assignment of error is overruled.

IV.

Plaintiffs contend in their fourth assignment of error that the Chancellor erred in denying their motion for a new trial on the basis of newly discovered evidence. The newly discovered evidence is that the three businesses purchased by plaintiffs are undergoing audit by the Internal Revenue Service for prior taxable years. This audit could possibly result in additional tax liabilities. In their motion for a new trial, plaintiffs contend that defendants' denial of any outstanding tax liabilities for these businesses was a fraudulent misrepresentation and therefore voided the contract of sale.

A new trial will be granted on account of newly discovered evidence only when it is evident that an injustice has been done and a new trial will change the result. *Bean v. Commercial Security*, 25 Tenn.App. 254, 156 S.W.2d 338 (1941); *Travis v. Bacherig*, 7 Tenn.App. 638 (1928). The Chancellor is vested with a very broad discretion in considering the matter of granting a new trial on the grounds of newly discovered evidence. *Brown v. University Nursing Home*, 496 S.W.2d 503 (Tenn.App. 1972).

We find that the Chancellor's denial of the motion for a new trial was proper. The newly discovered evidence of an Internal Revenue Service audit and the possibility of additional tax liability would not change the jury's findings and the Chancellor's decision on the fraudulent misrepresentation issue. There is no evidence that defendants knew or had reason to know at the time of the sale of these businesses to plaintiffs that the businesses might be subject to additional tax liabilities. Therefore, defendants did not make a fraudulent misrepresentation by stating that there were no outstanding tax liabilities for these businesses.

Plaintiffs argue in their brief that the possibility of additional tax liability constitutes a breach of the following provision in the contract of sale: "You have represented and I have accepted that except as set forth on balance sheets of [Charlotte Roman Spa, Inc., World Wide Spas, Inc., Future Investments Company] attached to this letter, there are no other obligations which would materially and adversely affect the operation of such companies."

We have already decided that the Chancellor properly denied plaintiffs' motion to amend their pleadings to allege that the failure to reflect the collection fee liability owed to Nashville Adjustment Bureau on the balance sheets was a breach of the above provision of the contract. It should be remembered that this breach of contract issue was not tried in Chancery Court.

Plaintiffs' affidavits in support of their motion for a new trial indicate that there is a possibility of additional tax liabilities for the businesses sold to plaintiffs. The mere possibility of a tax liability is not an "obligation which would materially and adversely affect the operation of such companies." The fact that this newly discovered evidence indicates that there is a possibility of additional tax liability does not establish that an "injustice has been done and a new trial will change the result."

More certain evidence that there is a tax liability owed by these businesses for prior taxable years might establish that relief from the jury's findings and Chancellor's decision would be proper in the lower court under Rule 60. This type of evidence is not presented by plaintiffs on this appeal.

We find that the Chancellor properly denied plaintiffs' motion for a new trial based on newly discovered evidence. Therefore, the fourth assignment of error is overruled.

Having considered and overruled all of plaintiffs' assignments of error, we affirm the decision of the Chancellor and tax the costs of this cause to plaintiffs. We remand this cause to the Chancery Court for the purpose of conferring upon that court jurisdiction to entertain a Rule 60 motion, in the event plaintiffs seek such relief when a tax liability is clearly established.

Affirmed and remanded.

SHRIVER, P. J., and TODD, J., concur.