# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 7, 2002 Session

## PATRICK  L. MCCOLLUM v. DAN HUFFSTUTTER

**A Direct Appeal from the Circuit Court for Davidson County**
**No. 00C35     The Honorable Hamilton Gayden, Chancellor**

---

**No. M2002-00051-COA-R3-CV - Filed October 8, 2002**

---

This is an appeal from a Judgment on a jury verdict for Plaintiff.   Plaintiff sued Defendant on grounds of trespass, abuse of process, and outrageous conduct arising from Defendant's attempt to serve a writ of possession at Plaintiff's place of business.  A jury found for Plaintiff on all grounds.   Defendant appeals, alleging seven grounds for reversal: (1) The Trial Court erred in not dismissing the complaint on the grounds of an executed Settlement Agreement and Full Release of All Claims; (2) The Trial Court erred in failing to grant a new trial on the grounds of newly discovered evidence; (3) The Trial Court erred in not granting Defendant's Motion for Summary Judgment, and in failing to grant the Defendant's Motion for Directed Verdict; (4) The jury verdict should be set aside and the complaint dismissed on the grounds of an oral agreement not to file civil proceedings; (5) The Trial Court erred in failing to give the special instructions requested by the Defendant; (6) The Trial Court erred in not granting a new trial on the grounds of improper conduct by counsel for the Plaintiff; (7) The verdict and remittitur were excessive and given under the influence of passion and prejudice.  We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Michael D. Noel, Nashville, For Appellant, Dan Huffstutter

Stephen C. Knight, Nashville, For Appellee, Patrick L. McCollum

### OPINION

This is an appeal from a Judgment Order entered on a jury verdict.  Patrick L. McCollum ("Mr. McCollum," "Appellee," or "Plaintiff") is the president and C.E.O. of Nashville Coach Works, Inc. ("Nashville Coach").   Nashville Coach is in the business of converting shells from bus manufacturers into luxury touring buses.  On July 26, 1995, Mobile Gourmet II, L.P. ("Mobile Gourmet") contacted Nashville Coach and the two companies entered into an agreement whereby Nashville Coach would convert Mobile Gourmet's bus ("Bus") into a gourmet kitchen for use in

their catering business. In late 1995, work was completed on the Bus and a balance of approximately sixty thousand dollars ($60,000) was due to Nashville Coach and payable by Mobile Gourmet. There was some dispute about the work and Mobile Gourmet did not pay. When payment was not forthcoming, Nashville Coach retained possession of the Bus under a mechanic's lien. Despite the mechanic's lien, Appellee spoke with Mr. Hamilton, the president of Mobile Gourmet, and agreed to allow Mobile Gourmet use of the Bus so long as it remained on Nashville Coach's premises.[1] Mr. Hamilton also advised Appellee that any demands for payment should be made through Mobile Gourmet's attorney, Dan Huffstutter ("Mr. Huffstutter," "Appellant," or "Defendant").

After making several phone calls to Mr. Huffstutter's office, Mr. McCollum and his sister, Sherry Wise ("Ms. Wise"), went to Appellant's law office on Thursday, December 21, 1995 in order to speak with Mr. Huffstutter about the money owed by his client, Mobile Gourmet. After waiting approximately two hours to see Mr. Huffstutter, Mr. McCollum and Ms. Wise proceeded to Mr. Huffstutter's office and put a copy of the mechanic's lien on his desk.

When Mr. McCollum arrived at his office on the morning of December 22, 1995, he had a message from Appellant's law partner, Mr. Whitney Kemper ("Mr. Kemper"), requesting that Mr. McCollum call him. Mr. Kemper informed Mr. McCollum that he [Mr. Kemper] and Mr. Huffstutter were going to the courthouse to get a writ of possession for the Bus and that Mr. McCollum should come down there with counsel. Mr. McCollum did not go to the courthouse. At approximately 10:00 a.m., Mr. Huffstutter and Mr. Hamilton arrived at Nashville Coach.[2] Mr. McCollum met them at the doorway and told Mr. Huffstutter several times to leave the property. Mr. Huffstutter then handed papers to Mr. Hamilton who put them inside Mr. McCollum's office.[3] At this point, Mr. McCollum shut the door and, in the process, "nudged," "pushed" or otherwise displaced Mr. Huffstutter.[4]

After leaving Nashville Coach, Mr. Huffstutter went to the Metropolitan Police Department and made a sworn offense report, which formed the basis of a criminal warrant for assault issued

---

[1] There is some dispute in the record as to whether Mr. McCollum called Mr. Hamilton, after releasing the Bus to Mobile Gourmet, to ask that he return the Bus for replacement of a stove and then kept the Bus under a mechanic's lien or whether Mr. McCollum and Mr. Hamilton agreed that Mobile Gourmet would have use of the Bus but only if it remained on the Nashville Coach property.

[2] Mr. McCollum testified that Mr. Huffstutter told Mr. McCollum that he [Mr. Huffstutter] was there to get "his bus" and that, if Mr. McCollum did not turn over the Bus, Mr. Huffstutter would have him [Mr. McCollum] arrested.

[3] These papers included and Order for Immediate Recovery of Property, dated December 22, 1995 and a Complaint and Petition for Immediate Recovery of Property, which was sworn and subscribed on December 22, 1995. Neither of these documents authorized the removal of the Bus from Nashville Coach's property.

[4] This is the action from which the assault charges against Mr. McCollum arose. There is dispute in the record as to what degree of force Mr. McCollum used against Mr. Huffstutter. Mr. McCollum testified that he "nudged" or "pushed" or "shoved" Mr. Huffstutter with his [Mr. McCollum's] torso but never touched Mr. Huffstutter with his [Mr. McCollum's] hands. In his affidavit on the assault, Mr. Huffstutter stated that Mr. McCollum "shoved" him [Mr. Huffstutter] and ordered him [Mr. Huffstutter] off the property.

against Mr. McCollum.[5]  While attending an office Christmas party at Old Hickory Country Club, Mr. McCollum was arrested at approximately 8:00 p.m. on the assault charges filed by Mr. Huffstutter.[6]  Mr. McCollum was handcuffed and taken to the police station where he was held in a holding cell for approximately two hours until his father made bail.[7]  On April 8, 1996, the date that the criminal assault case was set for trial, Mr.Huffstutter agreed to drop the criminal assault charges against Mr. McCollum and the District Attorney dismissed the case.[8]

On November 12, 1996, Nashville Coach and Mobile Gourmet entered into a Settlement Agreement and Full Release of All Claims agreement ("Settlement Agreement").  This Settlement Agreement resolved the civil dispute between Mobile Gourmet and Nashville Coach that arose from the bus conversion contract entered on July 26, 1995.[9]  An Agreed Order of Dismissal was entered on November 14, 1996 in the civil matter between National Coach and Mobile Gourmet.

On December 20, 1996, Mr. McCollum instituted a civil suit against Mr. Huffstutter for tortious conduct, including trespass, abuse of process, outrageous conduct and malicious prosecution. On March 4, 1997, Mr. Huffstutter filed a Motion for Summary Judgment and Affidavit in support of that Motion.  Mr. McCollum filed Plaintiff's Response to Defendant's Motion for Summary Judgment on the malicious prosecution claim and an Affidavit in support thererof.  After a hearing on the Defendant's Motion, Chancellor Ellen Hobbs Lyle entered an Order granting the Motion on

---

[5] Captain John D. Hoffman of the Metropolitan Police Department testified that his department has approximately 47,000 warrants currently waiting to be served.  He further testified that there are only 18 people available to serve these warrants.  Consequently, the department must exercise discretion in terms of what warrants get priority, with major felonies (e.g. murder, attempted murder, rape, armed robbery) getting top priority and simple assault warrants against private citizens getting a very low priority.  Despite this system of prioritizing, the warrant for Mr. McCollum was served the same day that it was obtained.

[6] Mr. McCollum testified that there were "several" officers present during the arrest, including Detective Tim Mason.  Mr. Huffstutter had previously represented Detective Mason and several members of his family on an estate case.

[7] Mr. McCollum testified that the officer on his right used undue force to handcuff him, although no formal complaint was filed against the officer.  Mr. McCollum's mother was witness to these events and was very upset ["hysterical"] during the arrest.  Mr. McCollum further testified that he was not permitted to use the restroom or obtain his overcoat before being taken to jail.

[8] Mr. Huffstutter claims that he dismissed the charges pursuant to an oral agreement between himself and Mr. McCollum that McCollum would not pursue civil charges against Mr. Huffstutter.  Mr. McCollum and those present to testify for him at his criminal trial deny that any such oral agreement was ever contemplated.  There is no written evidence of any such agreement.

[9] This Settlement Agreement was neither signed nor negotiated by either the Appellant or the Appellee in this case.  John Thomas signed as agent for Mobile Gourmet and Ronald D. Wise signed as Vice President of Nashville Coach.  Ken Jones, attorney for Nashville Coach on its civil case with Mobile Gourmet, drafted the Settlement Agreement.  In Mr. Jones' testimony, he states that the Settlement Agreement was between Nashville Coach and Mobile Gourmet and was meant to cut off any further claims between those two parties, such claims being those relating only to the Bus at issue in the case.  The Settlement Agreement, in its final form, was the result of negotiations between Ken Jones and Mr. Kemper, attorney for Mobile Gourmet.

May 6, 1997. This Order dismissed only the malicious prosecution claim and gave the Plaintiff until May 16, 1997 to amend the complaint to include a cause of action for outrageous conduct and/or abuse of process. Plaintiff filed an Amended Complaint on May 19, 1997 and Defendant filed a Motion to Dismiss on June 6, 1997, asserting that the May 19, 1997 filing date exceeded the time limit of Chancellor Lyle's Order by three (3) days. The Motion to Dismiss was denied by Order on July 2, 1997 and Defendant filed his Answer to the Amended Complaint on July 23, 1997.

After discovery and a substitution of counsel for the Defendant, an Order of Recusal was entered by Chancellor Ellen Hobbs Lyle on May 14, 1999 and an Order was entered on May 18, 1999, transferring the case to Chancellor Carol L. McCoy. On May 21, 1999, the Defendant filed a Motion for Summary Judgment. Chancellor McCoy entered an Order of Recusal on November 5, 1999 and the case was transferred by Order to Judge Hamilton Gayden on November 16, 1999. Plaintiff filed a Response to Defendant's [May 21, 1999] Motion for Summary Judgment on July 19, 2000. On July 28, 2000, Judge Gayden entered an Order granting the Motion for Summary Judgment as to the malicious prosecution claim and denying the Motion in all other respects. On August 17, 2000, this case was finally set for jury trial to commence on November 27, 2000.

This matter was tried before a jury between November 27 and 30, 2000. On November 30, the jury reached a verdict, awarding Mr. McCollum compensatory damages in the amount of seventy-five thousand ($75,000.00) and punitive damages in the amount of one-hundred-seventy-five thousand ($175,000.00). On December 7, 2000, Mr. Huffstutter filed a Motion for the Trial Court to Vacate and Disapprove Punitive Damages. This Motion was subsequently denied and judgment was entered on the jury verdict on December 15, 2000. Mr. Huffstutter filed a Motion for a New Trial on January 11, 2001 and amended and supplemented that Motion on October 9, 2001.[10] Defendant's Motion for New Trial and Motion for a Remittitur, Amended and Supplemental Motion for a New Trial, and Motion to Vacate Punitive Damages Verdict were heard on November 7, 2001. On December 10, 2001, the court entered an Order denying all of the Defendant's motions except the Defendant's Motion for New Trial on the grounds that the verdict was excessive. The Court suggested remittitur as to both compensatory and punitive damages wherein the amount of compensatory damages should not exceed fifty thousand dollars ($50,000) and the amount of punitive damages should not exceed twenty-five thousand dollars ($25,000). On December 18, 2001, Plaintiff accepted the remittitur under protest. On January 8, 2002, Mr. Huffstutter filed Notice of Appeal. Final judgment in favor of Plaintiff, and reflecting the remittitur amounts, was entered on March 11, 2002. Defendant appeals and presents seven issues for review:

> 1. Whether the trial court erred in not dismissing the complaint on the grounds of an executed Settlement Agreement and Full Release of All Claims.
>
> 2. Whether the trial court erred in failing to grant a new trial on the grounds of newly discovered evidence.

---

[10] Pursuant to Tenn. R. App. P. 3(e), Defendant's Motion for New Trial specifically mentioned each of the seven issues presented on appeal.

3. Whether the trial court erred in not granting the Defendant's Motion for Summary Judgment, and in failing to grant the Defendant's Motion for a directed verdict.

4. Whether the jury verdict should be set aside and the complaint dismissed on the grounds of an oral agreement not to file civil proceedings.

5. Whether the trial court erred in failing to give the special instruction requested by the Defendant.

6. Whether the trial court erred in not granting a new trial on the grounds of improper conduct by counsel for the Plaintiff.

7. Whether the verdict and remittitur were excessive and given under influence of passion and prejudice.

Appellee presents one issue for review:

Whether the trial court's remittitur should be reversed and the jury verdict reinstated because the trial court's remittitur is contrary to the preponderance of the evidence.

We will consider the issues in the order presented.

1. Whether the trial court erred in not dismissing the complaint on the grounds of an executed Settlement Agreement and Full Release of All Claims.

The pertinent sections of the Settlement Agreement at issue in this case read as follows:

This Settlement Agreement and Full Release of All Claims (the "Settlement Agreement") is made and entered into as of November 12, 1996, by and between Mobile Gourmet II, a Nevada partnership ("Mobile Gourmet") and Nashville Coach Works, Inc., a Tennessee corporation ("Nashville Coach" and, together with Mobile Gourmet, the "Parties").

\*                              \*                              \*

1.      Definition of Claims.  As used herein, "claims" shall mean any and all accounts, covenants, agreements, and obligations (other than the obligations contained in this Settlement Agreement) and any and all claims, debts, liabilities, offsets,

demands, costs, expenses, actions, or causes of action of every nature, character, and description, of any kind whatsoever, known or unknown, suspected or unsuspected, whether arising in contract or tort, or at law, in equity, or pursuant to administrative rule or regulation including, but not limited to, claims asserted or which could have been asserted by one party against another, as well as that party's agent, officer, director, employee, representative, attorney, or accountant, from the beginning of time until the date of this Settlement Agreement.

\*                                \*                                \*

6       Release of Claims. Except for the obligations set forth in this Settlement Agreement, Mobile Gourmet does hereby release, remise, and forever discharge Nashville Coach from any and all claims (as that term is defined above) related to the Bus or the Trailer. Mobile Gourmet shall forever refrain from commencing, instituting, or prosecuting any such claim against Nashville Coach. Nashville Coach does hereby release, remise, and forever discharge Mobile Gourmet from any and all claims (as that term is defined above) relating to the Bus or the Trailer. Nashville Coach shall forever refrain and forebear from commencing, instituting, or prosecuting any such claim against Mobile Gourmet.

The interpretation of a written contract is a matter of law, and thus, no presumption of correctness in its interpretation exists. *NSA DBA Benefit Plan, v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791 (Tenn. Ct. App.1997). The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. Ct. App.1984). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 277 S.W.2d 355 (Tenn. 1955). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn. Ct. App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526 (Tenn. Ct. App.1981). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *McKee v. Continental Ins. Co.*, 234 S.W.2d 830 (Tenn. 1950).

By its plain language, the Settlement Agreement names only Nashville Coach and Mobile Gourmet as parties to this agreement and limits the terms of the Settlement Agreement to those two

parties. Mr. McCollum is not a party to this Settlement Agreement and, therefore, cannot be bound by it.

However, Mr. Huffstutter contends that the Settlement Agreement included not only Nashville Coach's agreement to dismiss the Mobile Gourmet lawsuit but also an agreement to release all claims, specifically including any tort claim that could be filed by the registered agent of Nashville Coach (i.e. Mr. McCollum). Mr. Huffstutter relies, in part, upon the language "...claims asserted or which could have been asserted by one party against another, as well as **that party's agent, officer, director, employee, representative**, attorney, or accountant..." found in the Definition of Claims section of the agreement. The Appellant would have us read this language as follows: claims asserted or which could have been asserted by one party, as well as that party's agent, officer, et al., against another [party], as well as that party's agent, office, et al. However, as we are bound by the plain language of this document and the general rules of grammatical construction, we cannot be so expansive in our interpretation. As a matter of basic construction, the article "that," when coupled with a noun, refers to the most recent appearance of that noun[11]. Consequently, we can only read this language "as well as that party's agent..." to refer to the party against whom a claim is made. Even if we were willing to go so far outside the plain language of this contract as to include Mr. McCollum and Mr. Huffstutter under the definition of "Parties," we still could not find for Mr. Huffstutter on this issue. The tort claims at issue in this case are asserted "by the one party" (i.e. Mr. McCollum) against [only] another (i.e. Mr. Huffstutter) and not against Mr. Huffstutter's agent, director, et al. As discussed above, the language "as well as that party's agent..." only refers to the party against whom a claim is made (i.e. Mr. Huffstutter); therefore, it is not applicable in the context of this suit no matter how far we may stretch the plain language.

Finally, the language of the Release of Claims paragraph clarifies not only the fact that the contemplated parties to this Settlement Agreement include only Nashville Coach and Mobile Gourmet but this paragraph also clarifies the fact that any claim covered by the agreement must relate to the Bus. This Release of Claims paragraph contains a reciprocal promise whereby "Mobile Gourmet...release[s]...Nashville Coach" and "Nashville Coach...release[s]...Mobile Gourmet." There is no mention of any release of, or by, either party's agents or employees. Additionally, the language "...claims related to the Bus..." is unambiguous and we must interpret it as written.

It is clear that the tort claims brought by Mr. McCollum against Mr. Huffstutter were not the subject of this Settlement Agreement. The trial court was correct in not dismissing Mr. McCollum's suit on the basis of this Settlement Agreement.

---

[11] In grammatical terms, the construction at issue here is called a remote relative. A remote relative exists when a relative pronoun (*that, which, who*) is separated from its antecedent. For example, in the sentence "The files sitting in the courtroom that I was talking about yesterday are in disarray," the word *that* strictly modifies *courtroom*, not *files*. In the context of modern usage, remote relatives may be loosely interpreted in order to link them to their remote antecedents. However, in the context of contract interpretation, grammar must be read according to rules of general construction. In the case of a remote relative contained within a contract, courts must read any relative pronoun so that it modifies the noun that immediately precedes it. See Bryan A. Garner, A Dictionary of Modern Legal Usage 753 (2nd ed.1995).

2. Whether the trial court erred in failing to grant a new trial on the grounds of newly discovered evidence.

The record indicates that, by Amended and Supplemental Motion for a New Trial, filed on October 9, 2001, Defendant moved the trial court to set aside the verdict on the grounds of newly discovered evidence. After the date of trial, Defendant discovered evidence in form of the bond ("Bond"), which had, in fact, been posted on December 22, 1995 in accordance with the order of Judge Lyle for the issuance of the Writ of Possession of the Bus, and that the Writ of Possession was actually issued.[12] After hearing on November 7, 2001, the trial court denied Defendant's Motion for a New Trial on the ground of newly discovered evidence.

Tennessee law provides for a new trial based on newly discovered evidence only under very limited circumstances. That rule, as stated in *Crain v. Brown*, 823 S.W.2d 187 (Tenn. Ct. App.1991), is:

> Generally, in order for a party to obtain a new trial based on newly discovered evidence, it must be shown that the evidence was discovered after the trial, that it could not have been discovered earlier with due diligence, that it is material and not merely cumulative or impeaching, and that the evidence will probably change the result if a new trial is granted. 20 Tennessee Jurisprudence, New Trials §§ 6, 7, 8, 9 and 10.

Id. at 192.

A new trial will be granted on account of newly discovered evidence only when it is evident that an injustice has been done and a new trial will change the result. *Diversified Equities, Inc. v. Warren*, 567 S.W.2d 171, 175 (Tenn. Ct. App.1976). In ruling on a motion for new trial on the grounds of newly discovered evidence, the trial court is vested with wide discretion and its denial of such a motion will not be disturbed by an appellate court unless it has abused its discretion. *Evans v. Evans*, 558 S.W.2d 851, 853 (Tenn. Ct. App.1977).

The Bond evidence at issue here clearly fails the due diligence, materiality and result prongs of *Crain*. On the due diligence prong, we find at least three reason why even the slightest amount of due diligence would have led to the discovery of this Bond long before this case was ever filed. First, the Bond was posted on December 22, 1995, in the presence of Appellant when he and Mr. Kemper went to the courthouse to procure the Writ of Possession for the Bus.[13] Secondly, it was Mr. Kemper, Appellant's law partner and original counsel in this case, who signed the Bond as Surety. Consequently, the Bond should have been in the file records of their law firm and, even if no record was retained, the Bond was still within the personal knowledge of Mr. Huffstutter's original counsel

---

[12] Mr. Huffstutter did not have the actual Writ of Possession with him when he went to Nashville Coach on December 22, 1995, nor did Mr. McCollum receive a copy of that Writ of Possession.

[13] Mr. Huffstutter testified that he was outside a glass window while Mr. Kemper was inside obtaining the Writ of Possession and posting the bond. Although he could not hear the transaction, he could see it.

in this case. Finally, the Bond was filed in the court clerk's office and easily could have been obtained from that office with minimal effort.

On the materiality prong of *Crain*, the jury in this case returned a general verdict for Mr. McCollum on theories of trespass, abuse of process, and outrageous conduct. In his Amended Complaint of May 19,1997, Mr. McCollum alleged two separate instances of abuse of process. First, that Mr. Huffstutter misused the Order for Immediate Recovery of Property by alleging that it gave him the authority to possess the Bus.[14] Secondly, that Mr. Huffstutter committed abuse of process by misusing an arrest warrant to attempt to force Mr. McCollum to turn over the Bus.[15] The Bond evidence at issue here only relates to the first assertion of abuse of process, that is the misuse of the Order for Immediate Recovery of Property. The jury in this case returned a general verdict for the Plaintiff. Since there is no way to know which of the two factual predicates for abuse of process the jury based their finding on, we cannot say with certainty that the Bond evidence would have been material to this finding.

However, in deciding this issue, we do not have to rely on supposition as to what evidence the jury relied upon. The general verdict also encompassed the claims of trespass and outrageous conduct, neither of which were factually reliant upon the Bond evidence for their proof. These counts remain intact regardless of the Bond evidence. T.C.A. § 20-9-502 states that, "[i]f any counts in a declaration are good, a verdict for entire damages shall be applied to such good counts." Therefore, the Bond evidence would not have changed the result in this case. For these reasons and on the record before us we cannot say that the trial court abused its discretion in refusing a new trial on the ground of newly discovered evidence.

> 3. Whether the trial court erred in not granting the Defendant's Motion for Summary Judgment, and in failing to grant the Defendant's Motion for a directed verdict.

Since the trial court's denial of the summary judgment was predicated upon the existence of a genuine issue of fact, that decision is not reviewable where there has been a judgment rendered after a trial on the merits of the case. *Tate v. Monroe County*, 578 S.W.2d 642, 644 (Tenn. Ct. App.1978); *Mullins v. Precision Rubber Products Corp.*, 671 S.W.2d 496 (Tenn. Ct. App. 1984);

---

[14] Paragraph 3 of the Amended Complaint, filed on May 19, 1995, states that: "On December 22, 1995 while purporting to represent Mobile Gourmet II, a Nevada limited partnership, in a lawsuit involving Nashville Coach Works, Inc., Huffstutter appeared at the premises of Nashville Coach Works, Inc. with a copy of the complaint in the case styled Mobile Gourmet II v. Nashville Coach Works, Inc., Case No. 95-4011-I, Chancery Court of Davidson County, Tennessee, and a copy of an order of the Court in that case entitled "Order for Immediate Recovery of Property," which stated that a writ of possession would be issued upon posting of a bond in the amount of $10,000." Paragraph 5 continues: "Huffstutter's purpose in representing that he had a valid order and writ was to obtain the bus before posting of a bond and proper service of a writ...."

[15] Paragraph 5 of Mr. McCollum's Amended Complaint states that "...Mr. Huffstutter proceeded to swear out a false warrant for assault against [Mr. McCollum]." And Paragraph 6 continues "Huffstutter's statements in his affidavit to secure the warrant were false and misleading. Such statements were also made with the ulterior and improper motive of intimidating McCollum into releasing the bus without proper bond and writ."

***Bills v. Lindsay***, 909 S.W.2d 434 (Tenn. Ct. App. 1993).  The portion of this issue related to summary judgment is, therefore, without merit.

At the close of Plaintiff's case, Defendant made a motion for a directed verdict on the three claims at issue in this case, outrageous conduct, trespass, and abuse of process.  The trial court denied the motion, which was subsequently renewed at the close of all evidence, and again denied. Defendant filed a Motion for a New Trial, which, in accordance with Tenn.R.App.P. 3(e), specifically averred error by the trial court in denying Defendant's Motion for Directed Verdict.

The rule for determining a motion for directed verdict requires the trial judge and the reviewing court on appeal to look to all of the evidence, take the strongest legitimate view of it in favor of the opponent of the motion, and allow all reasonable inferences from it in his favor. The court must discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied.  ***Conatser v. Clarksville Coca-Cola Bottling Co***., 920 S.W.2d 646, 647 (Tenn. 1995); ***Hurley v. Tennessee Farmers Mut. Ins. Co.***, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995).  A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the defendant under any of the theories the defendant had advanced.  ***Id.; Conatser***, 920 S.W.2d at 647.

The rule is well settled that a general verdict is not vitiated by the absence of proof on some counts of the declaration if there is any evidence to sustain the allegations of a single count.[16] Consequently, in order to find for Appellant on this issue, we would have to find that Appellant was entitled to directed verdict on all three claims–trespass, abuse of process, and outrageous conduct. Because we find that Mr. Huffstutter was not entitled to directed verdict on the claim of abuse of process, we pretermit discussion of the merits of directed verdict on the trespass and outrageous conduct claims.

In order to recover for abuse of process, a plaintiff must establish by evidence two elements: (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. ***Priest v. Union Agency***, 125 S.W.2d 142 (Tenn. 1939).

Mr. McCollum presented two factual premises to establish his claim of abuse of process against Mr. Huffstutter.  First, that Mr. Huffstutter misused the Chancery Court's Order for Immediate Recovery of Property by representing to Mr. McCollum that the order gave authority to

---

[16] T.C.A. § 20-9-502; ***Tutton v. Patterson***, 714 S.W.2d 268, 271 (Tenn. 1986) ("The jury returned a general verdict for plaintiff.  On appeal, this Court found that the trial judge erred in not directing a verdict for the defendant on the attractive nuisance count.  There was material evidence in the record from which the jury could conclude that the playground doctrine applied;  thus applying T.C.A. § 20-9-502, this Court held that '[h]aving found the jury was justified in finding liability under the count of the declaration based on the playground doctrine, the verdict will be applied to that count.'"); ***See also Helton v. Reynolds***, 640 S.W.2d 5, 8 (Tenn. Ct. App. 1982) ("Notwithstanding our determination with regard to the first theory, because of  T.C.A. 20-9-502 and of decisional law, the judgment must still be affirmed if the proceedings as to a second theory are free of reversible error." (citations omitted)).

seize the Bus. Secondly, that Mr. Huffstutter misused an arrest warrant to attempt to force Mr. McCollum to turn over the Bus.

Mr. Huffstutter argues that, although the Order for Immediate Recovery of Property was not in proper form to allow for seizure of the Bus, presenting this document to Mr. McCollum for that purpose was an error and not an abuse of process. The jury heard testimony that a Writ of Possession, served by a sheriff, was the proper means of possessing the Bus. They heard testimony that Mr. Huffstutter was an attorney who had practiced for some twenty years. Mr. Huffstutter's own testimony indicated that he did not look to see what papers Mr. Kemper had handed him before taking them to Nashville Coach and using them as the basis for demanding the Bus from Mr. McCollum. Based upon this evidence, a reasonable jury could have found that an attorney should not only have known what process was necessary but should also have inquired as to what documents he was serving and whether he had the authority to serve them. A reasonable jury could have found that failure to do so constituted more than mere error, and veiled an ulterior motive.[17]

Furthermore, Plaintiff asserts a second factual premise for abuse of process, specifically that Mr. Huffstutter obtained an arrest warrant against Mr. McCollum solely for the purpose of forcing Mr. McCollum to turn over the Bus. The jury heard testimony that the warrant was served the same day it was issued, despite a great backlog of unserved warrants. The jury also heard a detailed accounting of the manner in which Mr. McCollum was arrested. The fact that Mr. McCollum was arrested at his office Christmas party, at night, by "several" officers, including Detective Tim Mason for whom Mr. Huffstutter had previously provided legal services could have led a reasonable jury to conclude that the circumstances of the arrest indicated a motive beyond mere convenience of time and place. On this evidence, a reasonable jury could have found that Mr. Huffstutter used the arrest warrant to intimidate Mr. McCollum and to force him to release the Bus. For the foregoing reasons, we hold that the trial court did not err in denying Defendant's Motion for Directed Verdict.

> 4. Whether the jury verdict should be set aside and the complaint dismissed on the grounds of an oral agreement not to file civil proceedings.

The record in this case contains a classic dispute of fact on the issue of whether an oral agreement existed wherein Mr. McCollum agreed not to file civil proceedings against Mr. Huffstutter in exchange for Mr. Huffstutter's agreement to drop the criminal assault charges against Mr. McCollum.

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trier of fact, either the trial judge or jury, who has the opportunity to observe the witnesses in their manner and demeanor while testifying and is in a far better position than this Court to decide those

---

[17] Disciplinary Rule 6-101, "Failing to Act Competently.–(A) A lawyer shall not: (1) Handle a legal matter which the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it. (2) Handle a legal matter without preparation adequate in the circumstances. (3) Neglect a legal matter entrusted to the lawyer.

issues. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***See id.; In re Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

The Defendant, in his answer to the Amended Complaint, asserted the oral agreement not to file a civil proceeding as an affirmative defense. The Defendant had the burden of proof on this defense and, in fact, offered evidence, in the form of his own testimony, that an oral agreement was reached on April 8, 1996. In turn, the Plaintiff put on evidence to refute the existence of an oral agreement. The jury was in the best position to weigh this evidence in reaching their verdict and we are in no position to second-guess their findings. For this reason, we hold that the jury verdict should not be set aside based upon the existence of an oral agreement.

> 5. Whether the trial court erred in failing to give the specia instructions requested by the Defendant.

The Defendant requested that the trial court charge the jury with the following Special Instruction on abuse of process:

> The gist of the tort of abuse of process consists in an unlawful use of a lawful process. In other words the bad intent must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law.
>
> An example would be where the process is perverted in a manner to accomplish a collateral purpose not contemplated by law, such as where a party is fraudulently induced to come within the jurisdiction of the Court so as to render him subject to its process, or in a criminal case where process is executed in an oppressive and unlawful manner.
>
> A mere arrest and detention under a lawful warrant, without any act amounting to a misuse or oppression, is not an abuse of process. A legal and legitimate use of process, to effect the result which such process is designed by law to accomplish is not an abuse of process.
>
> Members of the jury I further charge you that if legal process has been lawfully issued, no action for abuse of process would lie because it was used in a regular and legitimate manner, and this is true even though the user was actuated by a wrongful motive.

The trial court denied Defendant's request on this Special Instruction and instead used the Tennessee Pattern Jury Instruction on abuse of process, which reads as follows:

Abuse of process is the use of legal process for a result for which the legal process was not designed and for a wrongful purpose.

To be entitled to damages for abuse of process, the plaintiff must show that the legal process was used for a purpose for which it was not designed in order to compel the plaintiff to do something that could not legally be compelled by the use of that legal process.[18]

It is a well settled rule that trial courts should give a requested jury instruction if it satisfies three requirements (1) it is supported by the evidence, (2) it embodies the party's theory, (3) it is a correct statement of the law. *Hayes v. Gill,* 390 S.W.2d 213, 214 (Tenn. 1965); *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980); *Tallent v. Fox*, 141 S.W.2d 485, 497 (Tenn. Ct. App. 1940). However, where the court correctly charges the law applicable to the case, it is not error to deny a special request that embodies a theory of a party if the court charges in general terms and with clearness sound propositions of law that would guide the jury in reaching a correct decision in the case. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 445 (Tenn. 1992).

Appellant asserts that his special jury instruction was necessary to fully and fairly state the applicable law on abuse of process. We do not agree. The pattern instruction used by the trial court clearly communicates the principle, contained in Mr. Hufstutter's proposed instruction, that use of process in a "regular and legitimate manner" is not abuse of process. The pattern jury instruction states what constitutes abuse of process. Mr. Huffstutter's proposed instruction presents the converse in that it states what is not abuse of process. The use of this converse language makes Mr. Huffstutter's proposed instruction less clear than the pattern instruction, and creates a need for extraneous examples in the instruction. The pattern jury instruction, therefore, provides a more clear and concise statement of the law on abuse of process while, at the same time, encompassing Appellant's theory of the case. For this reason, we find that the trial court did not err in denying the Appellant's request for Special Instruction on the issue of abuse of process.

6. Whether the trial court erred in not granting a new trial on the grounds of improper conduct by counsel for the Plaintiff.

In general, the control over the argument of counsel resides with the trial court, and the trial court has broad discretion as to what shall and shall not be permitted in argument. The appellate courts generally will not interfere with the discretionary action of a trial court in refusing to grant a mistrial or a new trial for misconduct of counsel in argument unless the argument is clearly unwarranted and made purely for the purpose of appealing to passion, prejudices and sentiment which cannot be removed by sustaining the objection of opposing counsel. *Perkins v. Sadler*, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991). Moreover, we note from the record that defendant made no objection to the attorney's argument that a party who invites or waives error, or who fails to take

---

[18]Civil Instruction 8.30, Tennessee Pattern Jury Instructions (3rd ed. 1997).

reasonable steps to cure an error is not entitled to relief on appeal. Tenn. R. App. P. 36(a). We find no error by the trial court, and this issue is without merit.

We will consider Appellant's seventh issue for review and Appellee's issue for review together.

> 7.     Whether the verdict and remittitur were excessive and given under influence of passion and prejudice.
>
> Whether the trial court's remittitur should be reversed and the jury verdict reinstated because the trial court's remittitur is contrary to the preponderance of the evidence.

This court reviews a trial court's remittitur under the standard of Tenn. R. App. P. 13(d). *See* T.C.A. § 20-10-102(b); *Thrailkill v. Patterson*, 879 S.W.2d at 841 (Tenn. 1994). Accordingly, when reviewing a trial court's suggestion of remittitur, we must use the standard of review that applies to findings of a trial judge. *See Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 331 (Tenn.1996), and determine whether the evidence preponderates against the trial judge's adjustment. *See Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990); *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 331.

A review of the record does not suggest that the evidence preponderates against the trial court's finding that the verdict was excessive or the trial court's decision to remit Mr. McCollum's damages by $175,000. The trial court was in a better position than this court to weigh the testimony concerning Mr. McCollum's injuries and damages. Accordingly, we find that the record supports the trial court's decision to reduce Mr. McCollum's damages to $75,000.

For the foregoing reasons, we affirm the judgment of the trial court as remitted is affirmed. Costs of the appeal are assessed against the appellant, Dan Huffstutter, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.