885 F.2d 90
 Prod.Liab.Rep.(CCH)P 12,256
CONWAY, Neil and Conway, Joan, his wife, and Neil Conway to
the Use of Roadway Express, Inc., Appellants in No. 89-5024,
v.
WHITE TRUCKS, A DIVISION OF WHITE MOTOR CORPORATION;
Volvo-White Truck Corporation, Successor Corporation to
White Trucks, a Division of White Motor Corporation; and
National Seating Company and John Doe Corporation, Volvo
White Truck Corporation, Appellant in No. 89-5061.
 Nos. 89-5024, 89-5061.
 United States Court of Appeals,
Third Circuit.
 Argued June 13, 1989.
Decided Sept. 12, 1989.
Rehearing and Rehearing In Banc in
No. 89-5024 Denied Oct. 5, 1989.
As Amended Oct. 10, 1989.
 
 Todd J. O'Malley (argued), Law Offices of Todd J. O'Malley, Scranton, Pa., for Neil and Joan Conway, his wife, appellants and cross-appellees.
 P. Daniel Altland, Cleckner and Fearen, Harrisburg, Pa., for Roadway Express, Inc., appellant and cross-appellee.
 William C. Foster, Kelly, Harrington, McLaughlin & Foster, Charles W. Craven (argued), Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for Volvo White Truck Corp. appellee and cross-appellant.
 John R. Lenahan, Jr. (argued), Lenahan & Dempsey, P.C., Scranton, Pa., for Nat. Seating Co., appellee.
 Before SLOVITER and COWEN, and WEIS, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 Appellants, Neil Conway, Joan Conway, and Roadway Express, in its capacity as subrogee of Neil Conway's workmen's compensation claim (collectively referred to as "Conway"), were plaintiffs in a products liability action against appellee Volvo White Truck Corporation (Volvo) and National Seating Company. They appeal the district court's order setting aside a judgment in their favor and granting judgment in favor of Volvo. The legal basis on which plaintiffs sought to recover from Volvo was under the theory, adopted in some states, imposing liability on a successor corporation for injuries caused by products manufactured and sold by its predecessor. This issue is further complicated here because Volvo's predecessor did not dissolve, but has reorganized under Chapter 11 of the Bankruptcy Reform Act. The parties have also briefed the issue of whether the terms of a sale of corporate assets approved as part of a reorganization preclude suits based on claims which arose after the sale.
 
 
 2
 The district court had jurisdiction under 28 U.S.C. Sec. 1332(a)(1) (1982). We have jurisdiction over this final order of the district court under 28 U.S.C. Sec. 1291 (1982). Our review of the district court's interpretation of the Pennsylvania law is plenary.
 
 II.
 
 3
 The facts of this case are set forth in detail in the two district court opinions addressing the successor liability issue. See Conway v. White Trucks, a Div. of White Motor Corp., 692 F.Supp. 442 (M.D.Pa.1988), vacating, 639 F.Supp. 160 (M.D.Pa.1986). We set forth those facts of particular relevance to this appeal.
 
 
 4
 White Motor Corporation (White), a major truck manufacturer, filed for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 on September 4, 1980. In June 1981, A.B. Volvo, through its subsidiary, Volvo White Truck Corporation (Volvo), agreed to purchase various truck manufacturing facilities from White. After notice and a hearing, the Bankruptcy Court for the Northern District of Ohio approved the sale on August 13, 1981, and Volvo took control of the assets at that time. The final agreement entered into by the parties on June 15, 1983, provided that Volvo North America would indemnify White's product liability for accidents occurring between May 1, 1983 and December 31, 1992, which involved vehicles assembled before September 1, 1981, but that Volvo would not be liable for any other claims. This supplemental agreement was approved by the bankruptcy court on June 29, 1983.
 
 
 5
 Claims based on accidents occurring before May 1, 1983 were to be handled through a trust fund created as part of White's plan of reorganization and where appropriate, by White's insurers and codefendants. On August 1, 1983 the bankruptcy court entered an order fixing August 30, 1983 as the bar date for filing proofs of claim against White with the bankruptcy court. Notice of the bar date was provided to known claimants through direct mail and to others by publication in national newspapers such as the Wall Street Journal and the New York Times. Appellant Neil Conway asserts, and there is no evidence to the contrary, that he did not have any notice of White's bankruptcy, the sale agreement, or the bar date prior to the time for filing proofs of claim had elapsed. He learned of the White bankruptcy and its probable effect on his claim against White in March or April of 1984.
 
 
 6
 Conway was injured during the course of his employment in March 1982 when the truck he was driving hit a pothole, causing the driver's seat to lurch forward. His knee struck the dashboard of the truck, and he suffered a serious injury which resulted in his inability to work for five months. Within one month of the accident, appellant was diagnosed as having sustained "traumatic, injury related, chondromalacia patella," Supp. App. at 535, and underwent a program of therapy. When the condition of his knee deteriorated, appellant underwent surgery in November 1983.
 
 
 7
 Appellant and his wife brought suit in federal court in March 1984 against White, Volvo, National Seating Company, the manufacturer of the seat, and John Doe Corporation. Conway's employer, Roadway Express, also participated in the litigation as a plaintiff, seeking to recover the amount of workmen's compensation it paid to Conway on account of his injury.[1] The complaint alleged a variety of strict liability, negligence, and breach of warranty theories against the various defendants, the gist of which was that the cab and/or seat were defectively designed.
 
 
 8
 White filed a motion for summary judgment on the ground that Conway had not filed a proof of claim in the bankruptcy proceeding prior to the bar date. Conway filed no objection, and White was dismissed from the case. Volvo sought summary judgment on the ground that it could not be liable as a successor corporation for claims involving products manufactured by White, and that Conway's claim was precluded by its agreement, approved by the bankruptcy court, which provided that Volvo was not assuming liability for accidents occuring before May 1, 1983. The district court denied summary judgment. After a non-jury trial on the issue of successor liability, the court determined that under the "product line" exception to the general rule of nonliability for successors adopted by the Pennsylvania Superior Court, Volvo could be liable to appellant for defective design by White. 639 F.Supp. at 164 (M.D.Pa.1986).
 
 
 9
 Plaintiff proceeded to trial against Volvo on his theory that the White truck was defectively designed and against National on a design defect theory related to the seat. The jury found Volvo liable for appellant's injury and exonerated National, awarding appellant $1,230,532 in damages.
 
 
 10
 Volvo filed a variety of post-trial motions urging the district court to reconsider its earlier ruling that Volvo was liable for successor liability and also asserting a variety of trial errors which it claimed warranted a new trial. The district court thereafter amended its earlier ruling and determined that because a fund had been established in White's bankruptcy for payment of product liability claims arising prior to May 1, 1983, imposition of successor liability on Volvo was inappropriate because Conway had had a remedy against White, the original manufacturer of the truck. It directed a verdict for Volvo, and set aside its earlier judgment and the jury verdict.
 
 
 11
 Conway appeals the grant of the directed verdict as based on an erroneous application of Pennsylvania law and as based on an erroneous finding as to his notice of the ability to proceed against White in the bankruptcy. Volvo filed a protective cross-appeal alleging error in the denial of its new trial motions, and National also filed a brief asking this court to rule that, if a new trial is warranted, it be against Volvo alone.III.
 
 
 12
 We first address the district court's legal conclusion with respect to the applicability under Pennsylvania law of the "product line" exception to the general rule of successor nonliability.
 
 
 13
 It is a "well-settled rule of corporate law [that] where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." Polius v. Clark Equipment Co., 802 F.2d 75, 77 (3d Cir.1986) (citing 15 W. Fletcher, Cyclopedia of the Law of Private Corporations, Sec. 7122 (Perm.Ed.1983)). A 1975 Pennsylvania Superior Court decision referred to a number of exceptions to this general rule where "(1) the purchaser expressly or impliedly agrees to assume such obligation; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulently entered into to escape liability." Husak v. Berkel, Inc., 234 Pa.Super. 452, 456, 341 A.2d 174, 176 (1975). We note that none of the cases cited in Husak as supporting these exceptions emanated from the Pennsylvania Supreme Court.
 
 
 14
 In Dawejko v. Jorgensen Steel Co., 290 Pa.Super. 15, 18-19, 434 A.2d 106, 107-08 (1981), the Pennsylvania Superior Court was faced with the question whether the general rule of successor nonliability should be extended beyond these more established exceptions. It noted that a number of jurisdictions had expanded the continuation exception by shifting the emphasis from corporate formalities "to an inquiry regarding the nature of the business operations," Dawejko, 290 Pa.Super. at 19, 434 A.2d at 108 (citing Cyr v. B. Offen & Co., 501 F.2d 1145 (1st Cir.1974) (New Hampshire law would recognize an expanded continuation exception)); Turner v. Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873 (1976) (Michigan recognizes expanded concept of continuity focusing on continuity of management, personnel, physical location, and assets)).[2] The Dawejko Court chose, however, to follow those jurisdictions which had adopted the product line exception, which bases liability on the continued marketing by the successor of the predecessor's product. See Ray v. Alad Corp., 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977) (tort concept of risk spreading mandated finding that successor who continues to market a product line purchased from predecessor assumes predecessor's liabilities for defective products); Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 431 A.2d 811 (1981) (adopting product line exception).
 
 
 15
 The Superior Court believed it better "not to phrase the new exception too tightly," Dawejko, 290 Pa.Super. at 26, 434 A.2d at 111, letting its application turn on whether, in the particular case, "it is just to impose liability on the successor corporation," id. The court specifically noted that all the factors discussed in the state cases previously cited would be relevant, including the three-part test enunciated in Ray v. Alad Corp. See Dawejko, 290 Pa.Super. at 26, 434 A.2d at 111. Those factors include whether the successor advertised itself as an ongoing enterprise, whether it maintained the same product, name, personnel, property, and clients, whether it acquired the predecessor's name and good will, and whether it required the predecessor to dissolve. Id. The Ray test referred to in Dawejko stated that "[j]ustification for imposing strict liability upon a successor to a manufacturer ... rests upon (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products" as a quid pro quo for enjoying the predecessor's good will. Ray, 19 Cal.3d at 31, 136 Cal.Rptr. at 579-80, 560 P.2d at 8-9 (emphasis in original). Finally, the Dawejko court adopted the loosest formulation of the exception, that found in Ramirez, which states that:
 
 
 16
 [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.
 
 
 17
 Ramirez, 86 N.J. at 358, 431 A.2d at 825.
 
 
 18
 In this case the district court originally concluded that the imposition of successor liability on Volvo under Dawejko was clear and that "any other decision would have been irrational." 639 F.Supp. at 164. The court's findings of fact establish that Volvo-White purchased the name and good will of White; that although White continued to operate under a new name it no longer manufactured trucks; that Volvo marketed White's former products with only insignificant cosmetic changes under their former names; and that Volvo kept many of the same clients and retained many of White's former employees. 639 F.Supp. at 162.
 
 
 19
 On reconsideration after the jury verdict, the district court reaffirmed that the product line exception was the law of Pennsylvania, but concluded that it was not applicable on the facts of this case. In so doing, the court concluded that the existence of a fund in the bankruptcy court against which plaintiffs could have pursued a claim outweighed the factors that had originally made imposition of successor liability seem appropriate. The court stated that "the record clearly reflects that there was available insurance coverage and a special fund was set aside in the course of the reorganization to accommodate those in the position of the Plaintiffs. Sadly, however, the Plaintiffs for whatever reason lost their opportunity to take advantage of those measures by failing to timely file a Proof of Claim." 692 F.Supp. at 452.
 
 
 20
 Appellants argue that the district court's ultimate determination of successor nonliability was wrong as a matter of law because the district court should have applied the Ramirez test quoted above which the Superior Court specifically "adopted" and should not have given prime importance to the Ray factors, especially the destruction of plaintiffs remedy, which the Superior Court merely suggested were relevant. In Dawejko, however, the Superior Court explicitly left the contours of the product line exception vague, so that the court may be guided by the circumstances in the particular case. Dawejko, 290 Pa.Super. at 26, 434 A.2d at 111. The court specifically stated that all the factors mentioned in all the cited cases were to be considered and that it "will always be useful to consider whether the three-part test stated in Ray v. Alad Corp. ... has been met." Id.
 
 
 21
 Since Dawejko does little more than permit a trial court to apply the product line exception to impose successor liability in an appropriate case, we are unpersuaded by Conway's argument that a different result was mandated in this case as a matter of law. We are, of course, sitting in diversity where we have the difficult role of predicting what the highest court of the state would do before it has intimated any view on the subject. As we said in Vargus v. Pitman Manufacturing Co., 675 F.2d 73, 76 (3d Cir.1982), if a change "in the basic Pennsylvania tort law is to be forthcoming it should emerge from a majority of [the Pennsylvania Supreme Court.]" For that purpose, the "decisions of intermediate state courts are data for ascertaining state law in the absence of controlling state supreme court precedent." Id. (paraphrasing West v. AT & T, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).
 
 
 22
 The Pennsylvania Supreme Court has not spoken on the issue of the product line exception set out in Dawejko, and thus we have no definitive Pennsylvania authority delineating the contours of this doctrine. We are uncertain whether the Pennsylvania Supreme Court would adopt the product line exception in any form. Subsequent to the Dawejko opinion, only one state, Washington, has adopted the product line exception, see Martin v. Abbott Laboratories, 102 Wash.2d 581, 689 P.2d 368 (1984) (en banc) (adopting Ray v. Alad ), bringing to three the number of states whose supreme courts have embraced this doctrine. On the other hand, numerous states have decided to the contrary. In Niccum v. Hydra Tool Corp., 438 N.W.2d 96 (Minn.1989), the Minnesota Supreme Court rejected the product line exception after noting that appellate courts in sixteen states have explicitly rejected the doctrine in the last decade, see id. at 99-100 n. 2.
 
 
 23
 For purposes of our decision, we will assume arguendo that Pennsylvania would follow the Dawejko decision. We predict, however, that it would not apply such an exception in cases where the claimant had a potential remedy against the original manufacturer, but failed to exercise all available means to assert his or her claim.
 
 
 24
 The product line exception evolved out of the concern by the California Supreme Court (the Court from which the strict product liability tort emanated) about the effect of the successor nonliability rule on the risk shifting principle which underlies strict tort liability for defective products. See Ray v. Alad, 19 Cal.3d at 30-31, 136 Cal.Rptr. at 579-80, 560 P.2d at 8-9. The rationale for the strict liability rule is that the manufacturer is in a better position to distribute the cost of insuring against such injuries than is the defenseless victim. If a remedy against the original manufacturer was available, however, the consumer has not been obliged to bear the risk and the justification for imposing successor liability evaporates. Thus, as a logical matter, the loss of a remedy against the original manufacturer must be a prerequisite to the invocation of the product line exception. Otherwise, the exception would in effect swallow the general rule of successor nonliability.
 
 
 25
 Cases since Ray have noted that the application of the product line exception requires a balancing of the risk shifting principle against the fault principle which underlies all tort law. See Bourque v. Lehmann Lathe, Inc., 476 So.2d 1125, 1129 (La.Ct.App.), writ denied, 479 So.2d 362 (La.1985); Hall v. Armstrong Cork, Inc., 103 Wash.2d 258, 692 P.2d 787, 791-92 (1984) (en banc). Thus, many of the cases analyzing the applicability of successor liability have emphasized the Ray requirement that the asset transfer must have caused the destruction of plaintiff's remedy. See Santa Maria v. Owens-Illinois, Inc., 808 F.2d 848, 859 (1st Cir.1986) (it is "crystal clear" under Turner or Ray that deprivation of plaintiff's remedy must have occurred by virtue of the asset transfer). The Ninth Circuit, with its extensive experience in interpreting California tort law, has determined that for the Ray exception to apply, the asset sale to the successor must "contribute to the destruction of the plaintiffs' remedies." Kline v. Johns-Manville, 745 F.2d 1217, 1220 (9th Cir.1984). Thus, it held that the product line exception did not apply when the predecessor corporation sold one of its lines to a successor, but continued in business until its bankruptcy years later. Thereafter, that court in Nelson v. Tiffany Indus., Inc., 778 F.2d 533, 538 (9th Cir.1985), predicted that California would not permit successor liability even after the predecessor totally dissolved following bankruptcy proceedings, and the sale of its entire assets to the successor followed. In both cases, the essential element of causation was missing since the successor's purchase of the product line did not cause the predecessor to dissolve or deprive the plaintiffs of a source of recovery.
 
 
 26
 The state of Washington, which has explicitly adopted the Ray formulation of the product line exception, see Martin, 102 Wash.2d at 616, 689 P.2d at 388, has just as explicitly held that the exception does not apply where a sale of less than all the predecessor's assets occurs because the purchasing company cannot be deemed to have caused the destruction of plaintiff's remedy. See Hall, 103 Wash.2d at 266, 692 P.2d at 792 (product line exception justified by lack of meaningful remedy caused by the successor's acquisition and destruction of the predecessor). New Jersey, the only state other than California and Washington whose Supreme Court has adopted the product line exception, has also recognized the importance of the total destruction of plaintiff's remedy against the predecessor as a prerequisite for application of the product line doctrine. See Ramirez, 86 N.J. at 350, 431 A.2d at 820. We see no reason why the Pennsylvania Supreme Court, if it chooses to adopt the product line exception at all, would depart from the clear and logical requirement that the exception is only applicable when the plaintiff has had no available remedy against the predecessor, and we predict that it would so hold. Nothing in Dawejko suggests to the contrary.
 
 
 27
 Conway contends that he should be able to sue Volvo, despite the availability of a remedy against White, because he had no notice of any of the relevant bankruptcy proceedings and therefore was unable to file a timely claim. We have previously stated that we accept Conway's representation that he first learned of White's bankruptcy at about the time he filed this suit in 1984, approximately eight months after the bar date for filing proofs of claim. Conway argues that publication in the Wall Street Journal and the New York Times was not reasonably calculated to give unknown tort claimants notice. But see Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950) (notice by publication may be reasonable where ascertainment of unknown claimants is burdensome); City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) (Mullane principle applies to notice in bankruptcy cases). Conway contends that due process requires publication in journals more likely to be read by the class of potential products liability claimants (most of whom could be expected to be truck drivers) such as trade magazines or union publications.[3]
 
 
 28
 The thrust of this argument is that successor liability is appropriate because Conway did not have an effective remedy against the predecessor. This argument is unavailing, however, because it primarily provides a justification for permitting Conway to file a late proof of claim with the bankruptcy court or to avoid the discharge, arguments which he did not vigorously assert against White, rather than a justification for imposing successor liability on Volvo. Whatever the merits of Conway's notice argument, the proper forum for raising it was the bankruptcy court. Conway, for whatever reasons, did not attempt to assert his inadequate notice argument against White either in the bankruptcy court as a justification for allowing a late proof of claim, as permitted by Bankruptcy Rule 3003(c)(3), or in the district court in opposing the grant of summary judgment in favor of White. In fact, Conway has not even appealed to this court challenging the dismissal of White, which remains a going concern.
 
 
 29
 Conway's counsel stated at oral argument that one of the reasons he did not object to the dismissal of White was because he was concerned that costs would be imposed against his clients if recovery against White was determined to be barred. That, however, is merely one of the many tactical decisions that lawyers must make throughout the litigation process. It does not detract from the fact that Conway may have been able to convince the district court that because Conway was deprived of notice, his claim against White should not be discharged.
 
 
 30
 The second reason asserted by Conway for failing to object to White's dismissal from this suit was his interpretation of the Sixth Circuit's opinion in In re White Motor Credit, 761 F.2d 270 (6th Cir.1985), as precluding recovery against White. Although the Sixth Circuit squarely held that "[a]ll pre-petition claims and post-petition claims against White which have not been filed with the Bankruptcy Court are barred by the statute and the orders of the lower courts," id. at 275, the court also expressed "no opinion as to whether the District Court should permit the filing of late claims at this stage of the proceedings," id. Indeed, Volvo has called to our attention an instance in which the Sixth Circuit, exercising its equitable powers, permitted maintenance of a claim which had not complied with all the technical requirements. In re White Motor Corp., 863 F.2d 50 (6th Cir.19880).
 
 
 31
 Thus, if Conway's notice argument is meritorious, then he had a remedy against White and the imposition of successor liability on Volvo is inappropriate as a matter of law. Of course, if the notice with respect to the bankruptcy is deemed to have been adequate, there was no excuse for Conway's failure to file a timely claim.[4] We conclude therefore that the district court neither erred nor abused its discretion in determining that Conway's failure to pursue the remedies against White which could have been available to him defeats his argument that successor liability should be imposed against Volvo. Under the circumstances of this case, it is simply not "just to impose liability on the successor corporation." Dawejko, 290 Pa.Super. at 26, 434 A.2d at 111. The fact that White's reorganization plan specifically provided a trust fund made up, at least in part from the proceeds of the sale to Volvo, which was available to satisfy claims such as Conway's, substantially distinguishes this case from Dawejko or Ray in which no contingency plan for future product liability claims was established.
 
 
 32
 In summary, we predict that the Pennsylvania Supreme Court, if it were to adopt the product line exception, would require the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition. We hold that Pennsylvania law would preclude successor liability where the plaintiff failed to make any effort to assert his potentially available remedies in bankruptcy or in a pending lawsuit against the original manufacturer. Because we decide this case on the basis of Pennsylvania law, we do not reach Volvo's argument that the bankruptcy court's order approving the sale of White's assets to Volvo free and clear precludes imposition of successor liability by virtue of the Supremacy Clause. Similarly, because we resolve this case in Volvo's favor, we do not address any of its arguments in favor of granting a new trial, nor do we address National Seating Company's argument that it should not be a party in the event we grant a new trial.
 
 IV.
 
 33
 For the reasons set forth above, we will affirm the district court's order dismissing appellants' successor liability claim against Volvo and setting aside the jury's verdict.
 
 
 
 [1]
 Conway apparently filed a similar suit in Pennsylvania Common Pleas Court in January 1984. That case was removed to federal court and consolidated with this action on August 5, 1985
 
 
 [2]
 Cyr is no longer good law in light of the New Hampshire Supreme Court's express rejection of its reasoning. See Simoneau v. South Bend Lathe, Inc., 130 N.H. 466, 543 A.2d 407, 408-09 (1988) (since New Hampshire does not recognize risk shifting as a basis for strict liability, there is no justification for adopting an exception to the successor nonliability rule on a risk shifting theory)
 
 
 [3]
 Conway attempts to heighten the appearance of inequity by arguing that his claim did not arise until November 1983 when his doctor determined that he would need knee surgery, well after the bar date. Under Pennsylvania law, however, a personal injury claim arises for purposes of the statute of limitations when the plaintiff becomes aware that s/he has suffered an injury caused by another party's conduct, or when by diligent inquiry s/he should have become aware of the injury. See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 84-85, 468 A.2d 468, 471 (1983). Conway suffered a disabling injury at the time of the accident, and the medical condition which ultimately required surgery was diagnosed within a month of the accident. In fact, Conway was out of work for five months after the accident and thus on notice of the seriousness of the injury. The cause of action clearly accrued in March or April 1982 at the latest, well before the bar date of August 30, 1983
 
 
 [4]
 We also reject Conway's argument that Volvo waived its right to rely on White's bankruptcy because it did not plead discharge in bankruptcy as an affirmative defense as required by Fed.R.Civ.P. 8(c). Only the party in bankruptcy can plead discharge in bankruptcy as an affirmative defense. Volvo's defense was not that Conway's claim against it was discharged, but that the existence of a remedy in the bankruptcy court precluded imposition of successor liability as a matter of Pennsylvania law, or alternatively that the effect of the sale of White's assets to it free and clear of claims arising prior to May 1, 1983 precluded imposition of successor liability as a matter of federal law