

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-24-2002

# Kradel v. Fox River Tractor Co

Precedential or Non-Precedential: Precedential

Docket No. 99-4069

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Kradel v. Fox River Tractor Co" (2002). *2002 Decisions.* Paper 666.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/666

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed October 24, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 99-4069 / 00-3146

HARRY T. KRADEL; MARILENE KRADEL, his wife,

Appellants

v.

FOX RIVER TRACTOR COMPANY, a foreign corporation;
FOX CORPORATION, a foreign corporation; PIPER
INDUSTRIES, INC., a foreign corporation; HINIKER
COMPANY, a foreign corporation; CERTIFIED PARTS, a
foreign corporation; AMCA/KOEHRING COMPANY; KENT
REYNOLDS, as escrow agent on behalf of the former
shareholders of defendant Piper Industries, Inc.
(Intervenor/Defendant in D.C.)

v.

HINIKER COMPANY,

Third Party Plaintiff

v.

AMCA/KOEHRING COMPANY,

Third Party Defendant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 96-1808)
District Judge: Honorable Alan N. Bloch

Argued December 12, 2000
Questions Certified to Supreme Court
of Tennessee February 6, 2001
Response of Supreme Court of Tennessee
to Certified Questions November 27, 2001

Before: SCIRICA, and AMBRO, Circuit Judges, and
POLLAK, District Judge.**

(Opinion filed: October 24, 2002)

Matthew L. Kurzweg (ARGUED)
445 Fort Pitt Boulevard
Fort Pitt Commons Building,
 Suite 400
Pittsburgh, PA 15222

        Attorney for Appellants

        Wayne W. Ringeisen (ARGUED)
        Arnd N. von Waldow
        Reed Smith Shaw & McClay
        435 Sixth Avenue
        Pittsburgh, PA 15219
         Attorney for Appellee Kent
        Reynolds, as Escrow Agent on
        Behalf of the Former Shareholders
        of Piper Industries, Inc.

        Clem C. Trischler (ARGUED)
        Pietragallo, Bosick & Gordon
        301 Grant Street
        One Oxford Centre, 38th Floor
        Pittsburgh, PA 15219
         Attorney for Appellee Hiniker
        Company

---

** Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

OPINION OF THE COURT

AMBRO, Circuit Judge.

Harry Kradel was injured in 1994 while operating a forage harvester. He and his wife, Marilene Kradel, filed this product liability suit in Pennsylvania state court in 1996, naming, inter alia, the original manufacturer and its corporate successors, Piper Industries, Inc. ("Piper") and the Hiniker Company ("Hiniker"), as defendants. The case was removed to the United States District Court for the Western District of Pennsylvania based on diversity of citizenship. 28 U.S.C. S 1332. The District Court granted summary judgment in favor of Hiniker and Piper on the grounds that (1) under Pennsylvania tort law, Hiniker is not liable because it does not fall within the "product line" exception to Pennsylvania's bar on successor liability, and (2) under Tennessee corporate law, Piper--which dissolved in 1986--is not liable for injuries caused by its products eight years after its dissolution.

The Kradels ask us to reverse the District Court's ruling in favor of Hiniker and Piper. We conclude that the District Court correctly ruled that Hiniker is not liable for the Kradels' injuries under Pennsylvania's successor liability law. Because the claim against Piper raised unsettled questions of Tennessee corporate law, we certified it--in the form of five questions--to the Supreme Court of Tennessee. That Court has resolved each of the certified questions against the Kradels.1 Accordingly, we affirm the District Court's judgment in favor of Piper as well.

I. Facts and Procedural History

Harry Kradel lost part of his right leg in 1994 in an accident involving a 1970 model Fox forage harvester (with

_____

1. Those questions and the answers to them are set out in II(B) of this opinion. We express our gratitude to the Tennessee Supreme Court for entertaining our certified questions and for responding so clearly and comprehensively.

3

a Fox corn head attachment) on his farm in western Pennsylvania. In 1970, Fox brand farm equipment was manufactured by the Koehring Company ("Koehring").2 In 1981, Koehring sold, inter alia, its Fox line to Piper. A provision of that asset sale agreement required Piper to assume Koehring's product liability claims.

Piper, in turn, sold the Fox line to Hiniker in 1986 by an agreement that expressly provided for no adoption of liabilities by Hiniker. Piper then dissolved under Tennessee law on December 31, 1986 by filing Articles of Dissolution.

After selling its farm equipment business, Koehring merged with another company in 1981 to become the AMCA/Koehring Company, which continues to operate today. AMCA/Koehring settled with the Kradels on October 5, 1998 for $450,000. The "released parties" under the AMCA/Koehring settlement agreement include "the present and former parents, subsidiaries, predecessors, affiliates, officers, directors, employees, agents, servants. . . , including but not limited to the Fox Tractor Division of Koehring Company; Koehring Company; AMCA/Koehring Company; . . . ."

This appeal is from the grant of summary judgment in favor of Hiniker, Piper, and Kent Reynolds, an escrow agent who holds assets for the benefit of Piper shareholders.3 We have jurisdiction under 28 U.S.C. S 1291 (which permits appeals from final decisions of the district courts), and we

_____

2. We found nothing in the parties' briefs or the portions of the record included within the parties' appendices that explains the involvement of Fox Corporation and Fox River Tractor Company, who were initially named as defendants in this action. It seems likely that these companies were the original manufacturers of the Fox line, and sold the line, with the accompanying "Fox" trademark, at some time prior to 1970, to the Koehring Company.

3. Reynolds remains in this case because the Kradels have sued him under the trust fund doctrine as an alternate way to recover from Piper. We treat the claim against him as part of the claim against Piper. The other defendants have all been dismissed. Fox River Tractor Company was eliminated for failure of service. Fox Corporation was dismissed pursuant to a motion by the plaintiff. Certified Parts was dismissed by stipulation of the parties.

review the District Court's grant of summary judgment de novo. American Medial Imaging Corp. v. St. Paul Fire and Marine Ins. Co., 949 F.2d 690, 692 (3d Cir. 1991).

II. Discussion

A. The Hiniker Claim

The District Court found Hiniker not liable under Pennsylvania law for injuries allegedly caused by Koehring's forage harvester and corn head attachment.[4] The Kradels argue that they can reach Hiniker under the "product line" exception to the general rules of successor liability. Because the Kradels successfully recovered a settlement from the original manufacturer, however, this argument is unavailing.

Under Pennsylvania's successor liability doctrine,"[i]n general, when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor." LaFountain v. Webb Indus. Corp., 951 F.2d 544, 546-47 (3d Cir. 1991). One exception to this rule is the "product line" exception, which Pennsylvania courts adopted in Dawejko v. Jorgensen Steel Co., 434 A.2d 106 (Pa. Super. Ct. 1981), because the successor liability doctrine left some plaintiffs who were injured by defective products without recourse. See Hill v. Trailmobile, Inc., 603 A.2d 602, 606 (Pa. Super. Ct. 1992) (explaining that "[p]laintiffs injured by products manufactured by predecessor corporations purchased by multiple corporations, or which shared no identity of corporate structure were, unfortunately, left without a remedy in strict liability").

When the Pennsylvania Superior Court first adopted the product line exception in Dawejko, it considered various formulations employed in other states. It then borrowed

_____

4. It is uncontested that Pennsylvania law governs the Kradels' suit against Hiniker. Thus we follow (or predict if necessary) what the Pennsylvania Supreme Court would do and, in so doing, we may rely on opinions of intermediate appellate courts. See Glenn Distributors Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 300 n.3 (3d Cir. 2002); Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 614 (3d Cir. 1992).

from New Jersey the most general statement of the exception:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly

> liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

Dawejko, 434 A.2d at 110 (quoting and adopting the standard from Ramirez v. Amsted Indus., Inc., 431 A.2d 811, 825 (N.J. 1981)). The Kradels argue from this formulation that the product line exception clearly confers liability on Hiniker. On its face, the exception quoted from Dawejko seems to support their argument. But the Kradels err in relying solely on this statement of the product line exception without considering the entire Dawejko opinion and its progeny.

The Dawejko court looked in part to Ray v. Alad Corp., 560 P.2d 3 (Cal. 1977), for guidance in formulating its statement of the product line exception. The California Supreme Court in Ray announced three requirements before the exception would apply:

> [S]trict liability should be imposed upon a successor to a manufacturer if three circumstances were shown:'(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.'

Dawejko, 434 A.2d at 109 (citing Ray, 560 P.2d at 8-9). Requirement (1) is most relevant for our purposes because the Kradels received a $450,000 settlement from

6

AMCA/Koehring, which, as will be discussed below, is effectively a recovery from the original manufacturer.

Dawejko characterized the three Ray factors as advisory only and expressly excluded them from its formulation of the product line exception. Dawejko, 434 A.2d at 111. Thus, were Dawejko the last statement on the issue, it would be unclear whether in Pennsylvania a recovery from the original manufacturer bars the Kradels from recovering from Hiniker, a successor corporation, under the product line exception.

The Pennsylvania Superior Court, however, has revisited this issue. In Hill, the Court recast the three factors in Ray as requirements.5 Hill, 603 A.2d at 606 ("The [Dawejko] court also stated that the product-line exception to the general rule of no liability for successor corporations may only be applied when the following three circumstances have each been established: [listing the three Ray

factors].")(emphasis omitted). While Hill  arguably read more into Dawejko than is there, it nevertheless elevated the Ray factors into prerequisites for the product line exception.6 Furthermore, the rule that the product line exception is unavailable when the plaintiff has recourse against the original manufacturer has been adopted subsequently in

_____

5. Before the Pennsylvania Superior Court decided Hill, we twice predicted that Pennsylvania courts would require the lack of remedy against an original manufacturer as a prerequisite to the product line exception. See Conway v. White Trucks, Div. of White Motor Corp., 885 F.2d 90, 95 (3d Cir. 1989) ("We predict, however that [Pennsylvania courts] would not apply [the product line] exception in cases where the claimant had a potential remedy against the original manufacturer, but failed to exercise all available means to assert his or her claim."); La Fountain v. Webb Indus. Corp., 951 F.2d 544, 547 (3d Cir. 1991) (noting that "[n]othing has happened since Conway  was decided to indicate any weakening of its holding").

6. Hill went on to explain why the failure to recover from the original manufacturer was a prerequisite to use of the exception. 603 A.2d at 607 ("The product-line exception is a remedy which was created to afford relief to plaintiffs, victims of manufacturing defects who, due to the sale or transfer of the manufacturing corporation, otherwise would have no avenue of redress for injuries caused by defective products.")(emphasis omitted).

7

another Pennsylvania case, Keselyak v. Reach All, Inc., 660 A.2d 1350, 1354 (Pa. Super. Ct. 1995). Though the court in Keselyak did not cite to Hill, it relied on the two cases from this Court predicting its holding on this issue, Conway and LaFountain. See supra n.5. It is thus clear that the inability to recover from an original manufacturer is a prerequisite in Pennsylvania to the use of the product line exception.

The Kradels assert that their recovery from AMCA/Koehring is not a recovery from an original manufacturer. We are not persuaded. First, it is obvious that the Kradels have treated AMCA/Koehring as the original manufacturer throughout this litigation. Hiniker references several court documents in which the Kradels refer to AMCA/Koehring as the original manufacturer. See Br. of Hiniker at 27-28. For example, the Kradels stated the following in their brief in opposition to summary judgment for Hiniker: "Plaintiffs also agree that they have already asserted a claim against the original manufacturer, Koehring Company, currently doing business as 'AMCA/Koehring Company,' and misnamed 'Koehring Corporation' in Plaintiff's Complaint (hereinafter collectively 'Koehring')." Hiniker's Supp. Appendix at 231. Hiniker argues that the doctrine of judicial estoppel prevents the Kradels from asserting inconsistent positions as to whether AMCA/Koehring is the same entity as the original manufacturer.

We need not look to judicial estoppel, however, to bind

the Kradels to their earlier representations. Adequate evidence that the Kradels had a remedy against the original manufacturer exists in the definition of "released parties" contained in AMCA/Koehring's settlement agreement with them. Hinker's Appendix at 255. The Kradels settled their claim with an entity known as "Koehring Company" when they settled with AMCA/Koehring. As noted above, the released parties included "AMCA/Koehring and the present and former parents, subsidiaries, predecessors, affiliates, officers, directors, employees, agents, servants and insurers of each, including but not limited to the Fox Tractor Division of Koehring Company; Koehring Company; AMCA/Koehring Company; AMCA International." Id. Thus, both in the release of "predecessors" and in the explicit

mention of "Koehring Company," the "released parties" with whom the Kradels settled included the entity that merged with and ultimately became the current AMCA/Koehring. We thus reject the Kradels' argument that they have not recovered from the original manufacturer, and we shall not permit them to rely on the product line exception. The District Court properly granted summary judgment in Hiniker's favor.

B. The Piper Claim

The District Court concluded that Piper could not be liable for claims against it arising eight years after its dissolution and therefore granted summary judgment in its favor. Whether that decision was correct depends on which version of Tennessee's corporation code--the one in place until January 1988 or the current one--applies to this case, whether Piper properly complied with the relevant dissolution laws, and whether a trust fund action is available against Reynolds to circumvent the effect of Piper's dissolution on its post-dissolution tort liabilities. These were at least partly unsettled matters of Tennessee corporate law. Accordingly, pursuant to Tennessee Supreme Court Rule 23, we certified the following five questions to the Tennessee Supreme Court:

> 1) What law governs the making of claims arising in 1994 against a corporation which filed Articles of Dissolution in 1986--the law of 1986 or those revisions to the law effective January 1, 1988, Tenn. Code Ann. Section 48-24-101, et seq.? More specifically, do the saving provisions of Tenn. Code Ann. Section 48-27-103(a)(2), stating that the repeal of the pre-1988 law does not affect liabilities incurred under the statute before its repeal, support the contention that a liability incurred after the law's effective date is governed by the 1988 revisions?

> 2) If the pre-1988 law applies, do the provisions of Tenn. Code Ann. Section 48-1-1013(a) [repealed] apply to liabilities incurred after Piper filed Articles of Dissolution and, if not, does the common law of

Tennessee bar such actions? See Great American Ins.
Co. v. Byrd & Watkins Constr., Inc., 630 F.2d 460, 461

9

(6th Cir. 1980); Cf., Hunter v. Fort Worth Capital Corp.,
620 S.W.2d 547, 549 (Tex. 1981).

3) Did Piper comply with Tenn. Code Ann. Section 48-
1-1007 [repealed]? If not, does the manner in which
Piper failed to comply invalidate an otherwise lawful
corporate dissolution and permit a cause of action
accruing almost eight years after the dissolution was
filed? Cf. Swindle v. Big River Broadcasting Corp., 905
S.W.2d 565, 567 (Tenn. Ct. App. 1995).

4) Do the pre-1988 Tennessee dissolution statutes
require provision for unforeseen future liabilities or
that the process of asset distribution to shareholders
be final? See Blankenship v. Demmler Mfg. Co. , 411
N.E.2d 1153, 1155 (Ill. App. Ct. 1980).

5) Could Kradel's claims proceed under the "trust fund"
doctrine established in Voightman & Co. v. Southern
Ry. Co., 131 S.W. 982, 983 (Tenn. 1910) and Bean v.
Commercial Sec., Inc., 156 S.W.2d 338, 346 (Tenn. Ct.
App. 1942), in the absence of corporate insolvency, if
other remedies are unavailable to Kradel for the claims
against Piper? See Ottarson v. Dobson & Johnson, Inc.,
430 S.W.2d 873, 878 (Tenn. Ct. App.1968).

The Tennessee Supreme Court accepted the certified
questions and resolved them thoroughly in Kradel v. Piper
Ind., Inc., 60 S.W.3d 744 (Tenn. 2001). Its answers, taken
directly from its opinion, are as follows:

[I]n answer to the first question certified, the General
Corporation Act, which was in effect before January 1,
1988, governs the propriety of Piper's dissolution and
the scope of the petitioner's remedies available against
Piper.

. . .

[I]n answer to the second question certified, Tennessee
Code Annotated section 48-1-1013(a) (repealed) does
apply to limit the liabilities incurred by Piper after it
filed its Articles of Dissolution.

. . .

10

[I]n answer to the third question certified, Piper fully
complied with the dissolution provisions of the
Tennessee General Corporation Act, effective prior to
January 1, 1988.

. . .

[In answer to the fourth question:] Because we have already discussed the answers to this question in addressing the third question certified, we answer respectfully, and without further comment, that the General Corporation Act does not require that adequate provisions be made for unforeseen future liabilities to effect a proper dissolution under the statute. In addition, we answer that the General Corporation Act does require a final distribution of corporate assets to shareholders "in accordance with their respective rights and interests," a requirement that appears to have been satisfied under the facts as certified.

. . .

[I]n answer to the [fifth] question certified, the trust fund doctrine has been applied to solvent corporations under Tennessee law, but the application of that doctrine in this case is necessarily limited by the provisions of Tennessee Code Annotated section 48-1-1013(a) (repealed).

Kradel, 60 S.W.3d at 750-58. In short, the Tennessee Supreme Court has, with minor caveats, decided each of the certified questions against the Kradels. Accordingly, the Kradels' claims against Piper and the escrow agent for Piper's shareholders, Reynolds, cannot succeed.

* * * * * * *

For the foregoing reasons, the District Court's judgment is affirmed.

A True Copy:
Teste:

        Clerk of the UnitedStates Court of Appeals
        for the Third Circuit

11