**Paul R. FORREST**

v.

**BELOIT CORPORATION and HARNISCHFEGER INDUSTRIES, INC.**

**No. CIV.A.00–CV–5032.**

United States District Court, E.D. Pennsylvania.

Aug. 20, 2003.

James Michael Beck, Dechert LLP, Phila, for Harnischfeger Industries, Inc., Defendant.

Mark A. Brand, Sachnoff & Weaver, Ltd., Chicago, IL, for Beloit Corporation, Harnischfeger Industries, Inc., Defendants.

Christopher Scott D'Angelo, Montgomery, Mc Cracken, Walker & Rhoads, Philadelphia, for Beloit Corporation, Harnischfeger Industries, Inc., Defendants.

Fred M. Feder, Feder, Della, Guardia & Feldman, Philadelphia, for Paul R. Forrest, Plaintiff.

Janelle E. Fulton, Montgomery McCracken Walker & Rhoads LLP, Phila, for Beloit Corporation, Defendant.

Cy Goldberg, Goldberg, Moore & Miller, PC, Philadelphia, for Moss Rehabilitation Hospital, Movant.

James P. Hadden, Rawle & Henderson, LLP, Philadelphia, for Beloit Corporation, Defendant.

Eric M. Hurwitz, Stradley Ronon Stevens & Young LLP, Philadelphia, for Harnischfeger Industries, Inc., Defendant.

Carmen C. Nasuti, Philadelphia, for Paul R. Forrest, Plaintiff.

Monica Maria Tynan, Quarles & Brady LLC, Chicago, IL, for Harnischfeger Industries, Inc., Beloit Corporation, Defendants.

## MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

In this product liability diversity action, Plaintiff Paul R. Forrest seeks damages from Defendants Beloit Corporation ("Beloit") and Harnischfeger Industries, Inc. ("HII").[1] Now before the Court is Defendant HII's Motion for Summary Judgment. For the reasons stated below, the Court will grant the Motion.

## I. Background

Viewed in the light most favorable to Plaintiff, the relevant facts are as follows. On November 29, 1999, acting within the course and scope of his employment at Jefferson–Smurfit Corporation, Plaintiff severely injured his left arm while feeding paper into a gloss calendar machine that was designed, manufactured and sold by Beloit.[2] (Am.Compl.¶ 14.) Plaintiff alleges that HII is liable as a successor corporation to Beloit. (Am.Compl.¶ 7.)

From before 1963, when the allegedly defective gloss calendar machine was sold, until 1986, Beloit was an independent Delaware corporation based in Beloit, Wisconsin. (Affidavit of Eric B. Fonstad ("Fonstad Aff.") ¶ 9.) Beloit designed, manufactured, sold, serviced and/or installed various products, including gloss calendar machines. (Id.) Before 1986, Beloit had no affiliation with HII or any other entity in the Harnischfeger family of corporations. (Id.¶ 8.)

Harnischfeger Corporation was a Delaware corporation created in 1971, based in Milwaukee, Wisconsin. (Id.¶ 4.) In 1986, Harnischfeger Corporation acquired Beloit ("the 1986 transaction"). (Id.¶¶ 10–11.) To carry out the transaction, Harnischfeger Corporation created a wholly-owned subsidiary, Beloit Acquisition Corporation, which then merged with Beloit, Beloit being the surviving company.[3] (Id.¶ 11.) Subsequently, Harnischfeger Corporation purchased all of Beloit's issued stock for $175,000,101.00. (Id.¶ 11.) Approximately six months later, Harnischfeger Corporation underwent a corporate reorganization and on September 17, 1986, HII was created as a Delaware corporation based in Milwaukee, Wisconsin. (Id.¶¶ 5, 12.) Harnischfeger Corporation then transferred its Beloit common stock to HII. (Id.¶ 12.) In late October 1986, Mitsubishi Heavy Industries ("Mitsubishi") acquired a 20% equity interest in Beloit for $60,000,000. (Id.¶ 13.) As part of this transaction, Mitsubishi obtained representation on Beloit's board of directors, and Beloit's bylaws were amended to provide

---

1. HII emerged from bankruptcy on July 21, 2001 as Joy Global, Inc. (Affidavit of Kenneth J. Stark ("Stark Aff.") ¶ 17). However, for the purposes of this Motion, the Court will refer to Joy Global, Inc. as HII.

2. While feeding the paper into the machine, Plaintiff's left hand was pulled between the machine's unguarded rollers. (Am. Compl.¶ 14.) Plaintiff suffered severe injuries and damages, including the surgical amputation of his left arm above the elbow. (Am. Compl.¶¶ 16–17.)

3. The Acquisition Agreement, attached to Plaintiff's Opposition Brief as Exhibit B, outlines the agreement between Beloit, the "Company"; Beloit Acquisition Corporation, the "Subsidiary"; and Harnischeger Corporation, the "Parent". The "Terms of Merger" involved only "the Company" and "Subsidiary"—not the "Parent": "Subsidiary shall be merged with and into the Company .... The separate corporate existence of Subsidiary shall thereupon cease, and the Company shall be the surviving corporation in the Merger." (Pl.Ex. B, Acquisition Agreement at 1.)

Mitsubishi a veto over significant Beloit corporate actions. (Id.¶ 13.)

In June 1999, HII and substantially all of its United States subsidiaries, including Beloit, filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.[4] (Stark Aff. ¶ 16.) Although these proceedings were jointly administered, Beloit and HII maintained their separate corporate structures by filing separate schedules of creditors and assets and by proceeding under separate case numbers. (Stark Aff. ¶ 16); (Fonstad Aff. ¶ 23.) After several months, continuing operating losses made it clear that Beloit had no prospect for reorganization. (Fonstad Aff. ¶ 23.) Consequently, the Bankruptcy Court approved the creation of the Beloit Liquidating Trust to dispose of Beloit's assets.[5]

Plaintiff commenced the current litigation against Beloit and HII on April 6, 2000. (Pl.Ex. L.) He is also pursuing claims against both HII and Beloit in bankruptcy.[6] (Pl.Ex. L); (Def.Ex. E.)

## II. Legal Standard

In deciding a motion for summary judgment pursuant to Fed.R.Civ.P. 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v.*

*Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (quoting *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must examine the evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "there can be 'no genuine issue as to any material fact' ... [where the nonmoving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Analysis

### A. Merger Exception

■■■ Under Pennsylvania law, when one corporation sells or transfers its assets to another corporation, the successor generally does not become liable for the debts and liabilities of its predecessor. *See e.g.,*

---

**4.** Pursuant to an Order of the Bankruptcy Court dated July 14, 2000, the automatic stay provisions of 11 U.S.C. § 362 were vacated effective October 4, 2000, permitting Plaintiff to continue his suit against HII and Beloit. (Pl.Ex. L.) (*In re Harnischfeger Industries Inc.,* 246 B.R. 421 (Bankr.D.Del.) (Claim # 11956); (Def.Ex. E.) (*In re Beloit Corp.,* Case No. 99–02177) (Bankr.D.Del.) (Claim # 00012261)).

**5.** HII emerged from bankruptcy on July 12, 2001 as Joy Global, Inc. (Fonstad Aff. ¶ 25); (Stark Aff. ¶ 17.) The bankruptcy reorganization canceled all equity stock interest in Beloit, and HII assumed only certain expressly guaranteed liabilities of Beloit. (Stark Aff.

¶ 17.) These guaranteed liabilities did not include Beloit's potential or actual product liability obligations. (Stark Aff. ¶ 17); (Fondstad Aff. ¶ 25.)

**6.** Instead of filing a standard proof of claim against Beloit, Plaintiff filed a "Request for Allowance of Administrative Claim Against Beloit Corporation" on December 5, 2000. (Def.Ex. E.) By stipulation, the bankruptcy claim against HII exists as a contingent administrative-expense claim and is contingent upon a finding of liability and damages in the present action. (Pl.Ex. L.)

*LaFountain v. Webb Indus. Corp.*, 951 F.2d 544, 546 (3d Cir.1991); *Keselyak v. Reach All, Inc.*, 443 Pa.Super. 71, 660 A.2d 1350, 1353 (1995). Exceptions to this general rule of successor nonliability include circumstances in which: (1) the purchaser expressly or impliedly agreed to assume the obligations; (2) the transaction amounted to a consolidation or merger; (3) the purchasing corporation was merely a continuation of the selling corporation; (4) the transaction was fraudulently entered into to escape liability; or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation. *Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602, 605 (1992).

■ Plaintiff argues that the 1986 transaction was a merger and that, therefore, successor liability should apply. Under Pennsylvania law, a merger occurs when two separate corporate entities combine into one surviving entity. *Seven Springs Farm. Inc. v. Croker*, 748 A.2d 740, 747 n. 4 (Pa.Super.2000) ("Merger has been defined as the uniting of two or more corporations by the transfer of property to one of them, which continues in existence, the others being merged into it.") (internal citations omitted). Although a legal merger was part of the 1986 transaction, that merger did not involve HII. Instead, a merger occurred between Beloit and Beloit Acquisition Corporation, with Beloit as the surviving entity.[7] Furthermore, Beloit continued to exist as a subsidiary of HII

for over thirteen years after the 1986 transaction. Accordingly, it is clear that the 1986 transaction did not amount to a *de jure* merger between Beloit and HII.[8]

■ Alternatively, Plaintiff contends that the 1986 transaction amounted to a *de facto* merger, a judge-made device that allows courts to decide whether a transaction, even though called something else, amounts to a merger. *In re Penn Central Securities Litigation*, 367 F.Supp. 1158, 1170 (E.D.Pa.1973). To determine the nature of a corporate transaction, a court must consider not only the provisions of the agreement, but also the consequences of the transaction. *Pol Am Pack v. Redicon Corp.*, 2000 WL 1539079, *3 (E.D.Pa. 2000); *Farris v. Glen Alden Corp.*, 393 Pa. 427, 432, 143 A.2d 25 (Pa.1958).

■ The following factors are relevant in determining whether a transaction is a *de facto* merger rather than an ordinary purchase and sale of assets:

(1) whether there is a continuation of the enterprise of the seller corporation, such that there is continuity of management, personnel, physical location, assets, and general business operations;

(2) whether there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock;

(3) whether the seller corporation ceases its ordinary business operations, liq-

---

7. In an attempt to show that HII merged with Beloit, Plaintiff attached several exhibits to its opposition to the Motion for Summary Judgment. However, none of those documents suggests that Beloit and Harnischfeger combined their separate corporate structures in any way. (*See* Pl.Ex. A, F, G, H, I, J, K.) Rather, they consistently describe Beloit as a subsidiary of HII and refer to HII's "acquisition" of Beloit. (Id.)

8. It is also clear that the 1986 transaction did not amount to a consolidation, which occurs when two or more corporations combine to form a new corporate entity, after which the previous corporate identities are dissolved. *Knapp v. North Am. Rockwell Corp.*, 506 F.2d 361, 365 (3d Cir.1974); *Savini v. Kent Mach. Works, Inc.*, 525 F.Supp. 711, 716 (E.D.Pa. 1981).

uidates, and dissolves as soon as legally and practically possible; and

(4) whether the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 310 (3d Cir.1985). Of these four factors, the transfer of stock is a key element in finding a *de facto* merger because it represents continuity of ownership. *Stutzman v. Syncro Machine Co., Inc.,* 1991 WL 66796, at *4, 1991 U.S. Dist. LEXIS 5308, *15 (E.D.Pa.1991); *Pol Am Pack v. Redicon Corp.,* 2000 WL 1539079, *3 (E.D.Pa.2000) (finding that plaintiff's *de facto* merger claim failed as a matter of law because the stock transfer element was absent from the acquisition of assets.) As in *Pol Am Pack,* Plaintiff's *de facto* merger claim must fail as a matter of law because the stock transfer element is absent from the 1986 transaction. Harnischfeger Corporation did not purchase Beloit by paying for the acquired assets with shares of its own stock, but rather purchased Beloit's issued stock for $175,000,101.00. Accordingly, because no reasonable juror could find that there was either a *de jure* or a *de facto* merger, the Court concludes that the merger exception does not apply and that Plaintiff cannot maintain his claims under this exception.

## B. Product Line Exception

 In addition to the well established exceptions to the general rule of successor non-liability, lower Pennsylvania courts have adopted the product line exception, which provides: "when a corporation buys substantially all of the assets of a corporate manufacturer and thereafter continues essentially the same manufacturing operation it may be strictly liable for defects in the products in the same product line, though they were in fact made by the predecessor." [9] *LaFountain,* 951 F.2d at 547; *Keselyak,* 660 A.2d at 1353. For the product line exception to apply, the following three facts must be present: (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business; (2) the successor's ability to assume the original manufacturer's risk-spreading role; and (3) the fairness of requiring the successor to assume responsibility for defective products as a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. *Conway,* 885 F.2d at 93 (finding these factors to be prerequisites to the applicability of the product line exception); *Keselyak,* 660 A.2d at 1353.

In this case, Plaintiff cannot successfully invoke the product line exception because he has a potential remedy against the original manufacturer. *See LaFountain,* 951 F.2d at 545 ("The availability of a remedy against the original manufacturer makes the [product line] exception inapplicable."). As articulated by the Third Circuit, "as a logical matter, the loss of a remedy against the original manufacturer must be a prerequisite to the invocation of the product line exception" because the rationale of the product line exception is that the "virtual destruction of the plaintiff's remedies against the original manufacturer was caused by the successor's acquisition." *Conway,* 885 F.2d at 95–97.

Here, Plaintiff has a potential remedy against Beloit, the original manufacturer

**9.** Although the Pennsylvania Supreme Court has not yet addressed the issue, the Third Circuit has assumed that Pennsylvania would adopt the product line exception. *LaFoun-* *tain,* 951 F.2d at 547; *Conway v. White Trucks,* 885 F.2d 90, at 95 (3d Cir.1989); *Kradel v. Fox River Tractor Co.,* 308 F.3d 328, 331–32 (3d Cir.2002).

of the allegedly defective gloss calendar machine. This is evidenced by the fact that he has filed a bankruptcy claim against Beloit. *Shaffer v. South State Mach., Inc.*, 995 F.Supp. 584, 586 (W.D.Pa. 1998) (finding that a potential remedy existed where plaintiff filed a proof of claim against a manufacturer who had initiated bankruptcy proceedings). The fact that Plaintiff may not ultimately recover in Bankruptcy Court does not alter the conclusion that a potential remedy exists. *La Fountain*, 951 F.2d at 546 (stating that it is "the existence of a *potential* remedy against the actual manufacturer [that] destroys the basis for invoking the product line exception") (emphasis added); *Conway*, 885 F.2d at 95 –97 (affirming the district court's determination that a potential remedy existed where claimant could have filed a proof of claim in the manufacturer's bankruptcy court proceedings but failed to do so in a timely manner). Indeed, since Plaintiff timely filed a claim in Bankruptcy Court, he has a greater possibility of an actual remedy than did the claimant in *Conway*, who never actually filed his claim. Furthermore, Beloit is named as a defendant in this civil action, providing another avenue through which Plaintiff has a potential remedy against the original manufacturer. *Gillyard v. Eastern Lift Truck Co., Inc.*, 1992 WL 25826, *3 (E.D.Pa.1992) (finding that Plaintiff could not invoke the product line exception where the original manufacturer was named in the law suit). Plaintiff's unsupported assertion that "Beloit no longer exists today ... as a potential source of monetary recovery," does not alter the analysis. (Pl. Mem. Law. at 3.) The relevant inquiry is not how much Plaintiff can recover from Beloit, but rather, whether a right to proceed against Beloit exists. *Gillyard*, 1992 WL 25826, at *3. Because no reasonable jury could find that Plaintiff lacks a potential remedy

against Beloit, HII cannot be found liable under the product line exception to the general rule of successor nonliability.

## IV. Conclusion

For the foregoing reasons, the Court will grant HII's Motion for Summary Judgment. An appropriate Order follows.

### ORDER

**AND NOW**, this day of August, 2003, upon consideration of Defendant Harnischfeger Industries, Inc.'s Motion for Summary Judgment (docket no. 27), Plaintiff's Response (docket no. 31), and Defendant Harnischfeger Industries, Inc.'s Reply (docket no. 33), and for the reasons stated in the accompanying Memorandum, **IT IS ORDERED** that:

1. Harnischfeger Industries, Inc.'s Motion for Summary Judgment is **GRANTED**.

2. **JUDGMENT** is entered in favor of Defendant Harnischfeger Industries, Inc. and against Plaintiff.